Carol Leann Clower THIGPEN,
Plaintiff/Appellant,

v.

James Dean THIGPEN,
Defendant/Appellee.

Court of Appeals of Tennessee,
Middle Section,
at Nashville.

Nov. 17, 1993.

Permission to Appeal Denied by
Supreme Court March 28, 1994.

Ken Burger, Murfreesboro, for plaintiff appellant.

Charles W. Burson, Atty. Gen. and Reporter Kathy M. Principe, Asst. Atty. Gen., for defendant appellee.

## OPINION

KOCH, Judge.

This appeal involves conviction for criminal contempt arising out of an altercation between two divorced parents in the presence of their nine-year-old son.[1] Following a bench trial, the Circuit Court for Wilson County found that both parents were in contempt and sentenced them to ten days in jail. The mother has appealed and takes issue with the evidentiary foundation for the trial court's decision and with the sufficiency of the judgment. Notwithstanding the State's concession that the evidence does not support the mother's conviction, we have determined that the record supports the trial court's finding of criminal contempt beyond a reasonable doubt. We therefore affirm the mother's conviction for criminal contempt but modify her sentence.

### I.

The Circuit Court for Wilson County declared Carol Leann Clower Thigpen and James Dean Thigpen divorced in accordance with Tenn.Code Ann. § 36–4–129(b) (1991) following a September 10, 1991 hearing. In its September 17, 1991 order, the trial court awarded Ms. Thigpen custody of the parties' son, Austin Thigpen, and gave Mr. Thigpen liberal visitation rights. The trial court also directed the parties "to remain in the presently implemented counselling program," to refrain from "harassing, aggravating, or demeaning conduct toward the other," and to refrain from discussing "the other in the presence of the child in any derogatory or negative manner."

The trial court's admonitions apparently had little impact. Within one week after the hearing, Mr. Thigpen criticized Ms. Thigpen in front of his son's schoolmates. Both the child and the child's therapist requested the trial court to intervene. In December 1991, Ms. Thigpen requested the trial court to redefine Mr. Thigpen's visitation rights in accordance with recommendations of the child's therapist. Noting the Thigpens' "intense ongoing animosity," the therapist explained that Austin

> feels considerable pressure by his father to visit and finds it difficult to set limits and handle the responsibility of making this decision. When Austin is unwilling or unable to visit his father, Mr. Thigpen feels neglected and believes that Austin's mother is putting pressure on him not to visit. This exacerbates Mr. Thigpen's anger at Mrs. Thigpen and places Austin in the middle of the conflict.

Mr. Thigpen responded to Ms. Thigpen's petition by asserting that "it has been the Wife's goal to get Husband out of the child's life by preventing visitation, parental interaction and involvement by Husband of any kind in the child's activities."

The parties had another confrontation at Austin's school approximately one week before the hearing on their petitions. Mr. Thigpen had made arrangements to take his son to an afternoon appointment. However, Austin telephoned him to state that he preferred that Ms. Thigpen take him to the appointment. A scuffle ensued in the hallway of Austin's school when both Mr. Thigpen and Ms. Thigpen arrived to pick up their son. Mr. Thigpen loudly berated and criticized Ms. Thigpen and then took Austin by the arm to leave. When the boy began to cry, Ms. Thigpen grabbed his other arm and attempted to wrest the boy from his father. Thereafter, both parents let their son go and began yelling and scuffling in the hallway. When the altercation ended, Mr. Thigpen took Austin to his appointment.

The trial court conducted a hearing on February 5, 1992. After hearing Austin's account of his parents' confrontation at school, the trial court determined that both parents had willfully disobeyed its earlier orders concerning harassing, aggravating, or demeaning conduct in their son's presence. Accordingly, the trial court sentenced both Mr. Thigpen and Ms. Thigpen to ten days in

---

1. This appeal was originally filed in the Court of Criminal Appeals but was transferred to this court in accordance with Tenn.R.App.P. 17. *Thigpen v. Thigpen*, App. No. 01–C–01–9208–CC–00253 (Tenn.Crim.App. Sept. 30, 1992). This court has jurisdiction over appeals from criminal contempt convictions arising out of civil proceedings. Tenn.Code Ann. § 16–4–108(b) (Supp. 1993).

jail and suspended four days of the sentences. The trial court directed Mr. Thigpen to serve his sentence on alternating Saturdays when he did not have visitation and Ms. Thigpen to serve hers on consecutive Thursdays. Only Ms. Thigpen has appealed.

## II.

██ The power to punish for contempt is inherent in the courts of justice. *Winfree v. State,* 175 Tenn. 427, 431, 135 S.W.2d 454, 455 (1940); Tenn.Code Ann. §§ 16–1–103 & 29–9–101 (1980). It is one of the tools available to the courts to maintain the integrity of their orders. *State v. Sammons,* 656 S.W.2d 862, 869 (Tenn.Crim.App.1982). Violation of a court's lawful orders is contemptuous conduct. Persons who do so may be found guilty of criminal contempt and, in the absence of a specific statute, may be imprisoned for ten days and fined $50 or both. *Sitton v. Finley,* 743 S.W.2d 933, 935 (Tenn. Crim.App.1987); *State Bd. of Dental Examiners v. Talley,* 185 Tenn. 83, 87, 203 S.W.2d 364, 366 (1947); Tenn.Code Ann. §§ 29–9–102(3), –103 (1980).

██ Criminal contempt convictions are punitive in character, and their primary purpose is to vindicate the court's authority. *Gunn v. Southern Bell Tel. & Tel. Co.,* 201 Tenn. 38, 41, 296 S.W.2d 843, 844 (1956); *Garrett v. Forest Lawn Memorial Gardens,* 588 S.W.2d 309, 315 (Tenn.Ct.App.1979). Persons charged with criminal contempt are presumed innocent, and the State must prove them guilty beyond a reasonable doubt. *Nashville Corp. v. United Steelworkers of Am.,* 187 Tenn. 444, 451, 215 S.W.2d 818, 821 (1948); *O'Brien v. State ex rel. Bibb,* 26 Tenn.App. 270, 272, 170 S.W.2d 931, 932 (1942).

██ Persons convicted of criminal contempt lose their presumption of innocence, *Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964), and bear the burden of overcoming their presumption of guilt on appeal. *Nuclear Fuel Servs., Inc. v. Local No. 3–677, Oil, Chem., & Atomic Workers Int'l Union,* 719 S.W.2d 550, 552 (Tenn.Crim.App.1986). Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt. Tenn.R.App.P. 13(e).

## III.

Ms. Thigpen asserts that nothing in her son's testimony approaches the minimal findings required to sustain the trial court's finding that she willfully disobeyed orders of the court. We respectfully disagree. The trial court's September 17, 1991 order, which Ms. Thigpen's own lawyer prepared, specifically stated that:

> Each party is enjoined from any type of harassing, aggravating, or demeaning conduct toward the other. Neither shall discuss the other in the presence of the child in any derogatory or negative way.

The Court clearly directed this order at both Mr. Thigpen and Ms. Thigpen, and the record contains no evidence that Ms. Thigpen was unaware of its terms.

Ms. Thigpen faced a dilemma when she arrived at school to pick up her son and discovered that Mr. Thigpen was also at school for the same purpose. She could have attempted to prevent Mr. Thigpen from taking their son to his appointment, or she could have permitted Mr. Thigpen to leave the school with the boy. She knew or should have known that choosing the former would almost certainly provoke a confrontation with Mr. Thigpen and that choosing the latter would upset her son.

We do not fault Ms. Thigpen for following her maternal desire to help her son avoid a disturbing situation. We do find, however, that Ms. Thigpen is responsible for her actions. The terms of the September 17, 1991 order were clear, and Ms. Thigpen knew that the order applied to both Mr. Thigpen and her. In light of her relationship with Mr. Thigpen, she must also have known that interceding on her son's behalf would provoke the very type of "harassing, aggravating, or demeaning conduct" that would violate the order.

██ While Mr. Thigpen could be viewed as the aggressor during this particular alter-

cation, Austin Thigpen's account of the incident was that both his parents were engaged in pushing, shoving, and yelling in the hallway of his school. He also testified that his mother tried to pull him away from his father. No matter how provoked or well-intentioned, Ms. Thigpen's conduct was willful and was inconsistent with the September 17, 1991 order.

 We find that the evidence supports the trial court's conclusion that Ms. Thigpen violated its September 17, 1991 order beyond a reasonable doubt. Accordingly, we affirm Ms. Thigpen's conviction for criminal contempt. Appellate courts, however, may modify sentences for contempt on appeal when they appear to be excessive. *Barrowman v. State ex rel. Evans*, 214 Tenn. 408, 414, 381 S.W.2d 251, 253–54 (1964); *Robinson v. Air Draulics Eng'g Co.*, 214 Tenn. 30, 40, 377 S.W.2d 908, 913 (1964). In light of the facts of this case, we have determined that the trial court should have suspended all but one day of Ms. Thigpen's sentence.

### IV.

Ms. Thigpen also appears to take issue with the adequacy of the trial court's contempt order because it does not recite the basis for its conclusion that she had willfully disobeyed the court's order. If she is asserting that she had no notice of the acts that were at issue, the statement of the evidence prepared and submitted by her attorney demonstrates that she knew precisely what conduct gave rise to her conviction for criminal contempt. The statement of the evidence relates the following:

> Thereafter, following the testimony of the child, the parties and their counsel engaged in informal discussion of the incident with the Court, but no sworn testimony was presented by either the Plaintiff [Mr. Thigpen] or the Defendant [Ms. Thigpen] prior to the Court's announcement of its sentence of six (6) days each for the parties.

### V.

We affirm the judgment finding Ms. Thigpen in criminal contempt for willfully violating the provision in the September 17, 1991

judgment enjoining her from engaging in harassing, aggravating, or demeaning conduct toward Mr. Thigpen. We remand the case to the trial court for the entry and enforcement of an order suspending all but one day of Ms. Thigpen's contempt sentence. We also tax the costs of this appeal in equal proportions to Carol Leann Clower Thigpen and her surety and to the State of Tennessee.

TODD, P.J., and CANTRELL, J., concur.