# IN THE COURT OF APPEALS OF TENNESSEE
## MIDDLE SECTION AT NASHVILLE

PAULA RENEE STEPHENS COONER,   )
                                  )

     Plaintiff/Appellant,         )
                                  )    Davidson Circuit
                                  )    No. 83D-265
VS.                            )
                                  )    Appeal No.
                                  )    01A01-9701-CV-00021

GARY KENT COONER,           )
                                  )

     Defendant/Appellee.      )

**FILED**

**October 10, 1997**

**Cecil W. Crowson
Appellate Court Clerk**

## DISSENTING OPINION

      This appeal involves a conviction for criminal contempt arising from a dispute over the custody of an adolescent child. After the Fourth Circuit Court for Davidson County found the mother in willful criminal contempt for depriving the father of the lawful custody of the child, the mother perfected this appeal challenging the adequacy of the notice of the contempt proceeding and the evidentiary foundation for the contempt petition.

### I.

      Paula Renee Stephens and Gary Kent Cooner were divorced in August 1983 in the Fourth Circuit Court for Davidson County. Ms. Stephens received custody of their 2½-year-old son, and Mr. Cooner was granted visitation and ordered to pay child support. Ms. Stephens subsequently remarried and over the next ten years returned to court on several occasions to obtain orders to require Mr. Cooner to honor his child support obligation.

      For reasons not apparent in this record, the parties transferred physical possession of their son from Ms. Stephens to Mr. Cooner in November 1993. They informed the trial court of this development during a December 1993 hearing on Ms. Stephens's petition to hold Mr. Cooner in contempt for not paying child support. In a February 1, 1994 order, the trial court noted that

> this present agreement is made with the understanding that the parties transferred physical possession of the minor child to the Respondent on November 8, 1993, and will be filing an Order changing custody of the minor child and setting an amount of current support for [sic] and after that date. In the event the parties are not able to agree upon an amount of current support, or payment by the Respondent on these arrearages, the parties will file a motion to have the matter set for further hearing on these issues.

No order was ever entered formally changing custody from Ms. Stephens to Mr. Cooner.

Mr. Cooner filed a motion to set child support after the parties could not agree on the amount of child support Ms. Stephens should pay. The trial court entered an order on June 6, 1994 directing Ms. Stephens to begin paying child support but offsetting Mr. Cooner's arrearage against her obligation. In this order, the trial court specifically found that "the child . . . is now in the custody of Gary Kent Cooner."

The parties' son apparently grew unhappy about living with Mr. Cooner, and complained to Ms. Stephens that Mr. Cooner was absent from the home a great deal of the time and that he was being supervised by Mr. Cooner's live-in girlfriend. He also had other complaints about Mr. Cooner's use of drugs and possession of intimate pictures of himself and his girlfriends. The child finally told his mother during their scheduled visitation over the 1996 Labor Day holiday that he wanted to move back in with her. Even though Mr. Cooner was apparently out of town at the time, Ms. Stephens accompanied her son to Mr. Cooner's house and helped him remove his clothing and furnishings in his room. While in the house, the boy showed Ms. Stephens drug paraphernalia and intimate pictures that he had taken from Mr. Cooner's room.

When he returned home, Mr. Cooner discovered that his son was gone. He apparently telephoned Ms. Stephens and discovered that the boy was with her. When they met later to discuss the situation, Ms. Stephens informed Mr. Cooner of their son's desire to move back in with her, and Mr. Cooner replied that they should think about it for several weeks. On September 6, 1996, Mr. Cooner filed a petition seeking to hold Ms. Stephens in civil and criminal contempt and also

obtained an ex parte temporary restraining order to prevent Ms. Stephens from continuing to deprive him of custody of his son. While the record does not show when she received notice of the temporary restraining order, Ms. Stephens returned the child and all his possessions to Mr. Cooner on September 7, 1996.

Ms. Stephens filed an answer to Mr. Cooner's petition for contempt admitting that Mr. Cooner had custody of the child but denying that she was in contempt for assisting her son move out of Mr. Cooner's house. She also requested that custody be changed from Mr. Cooner to her.

The record contains no indication that the notice requirements of Tenn. Crim. App. R. 42(b) were ever satisfied or that Mr. Cooner was ever required to elect whether to proceed first with his criminal contempt charge or his civil contempt charge. The transcript of the October 31, 1996 hearing, likewise, contains no indication that the parties understood from the outset the precise nature and purpose of the hearing. Accordingly, the only reasonable conclusion to be drawn from this record is that both the criminal and the civil contempt allegations were before the court simultaneously.

Very little evidence was actually taken during the October 31, 1996 hearing. Ms. Stephens was the only witness. She admitted that she had entered Mr. Cooner's house with her son and that she had helped her son remove his clothes and other belongings. She also explained that she "didn't feel it was going to be a problem" because she believed that Mr. Cooner would honor their son's desire to move "particularly given the incriminating things that were found there." She also stated that she returned the child to Mr. Cooner when she received the temporary restraining order. The trial court found Ms. Stephens to be "in willful criminal contempt of the Orders of this Court" and sentenced her to one night in jail. The trial court explained "her actions are absolutely shocking to this Court. Anybody that would go into a man's house and take his furniture out – I mean, it's a wonder they didn't get charged criminally. I cannot allow that."

**II.**

-3-

The court bases its decision to vacate the judgment for criminal contempt on the "constitutional right of due process." The concept of due process is such an elastic term that I am compelled to point out two specific shortcomings in these proceedings that require reversal of the judgment.

The first shortcoming is a substantive one. Criminal contempt proceedings are intended to vindicate the authority of the courts by punishing persons who willfully disobey lawful court orders. *State ex rel. Agee v. Chapman,* 922 S.W.2d 516, 519 (Tenn. Ct. App. 1995); *Thigpen v. Thigpen,* 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). In order to warrant a judgment of criminal contempt, the conduct must be specifically contrary to a court order, and the conduct must be willful or intentional. This record contains no indication that an order had ever been entered specifically directing Ms. Stephens not to accompany her son into Mr. Cooner's house without his presence or permission. Accordingly, notwithstanding how inappropriate or unwise Ms. Stephens's conduct might have been, it cannot support a judgment of criminal contempt.

Ms. Stephens could conceivably have violated the trial court's September 6, 1996 order directing her to return the parties' son to Mr. Cooner and to refrain from interfering with Mr. Cooner's custody rights. However, it is unlikely that this order could have been the basis for a petition for contempt filed contemporaneously with the order itself. Thus, the trial court's criminal contempt judgment cannot stand if it was based on Ms. Stephens's violation of the September 6, 1996 order. Ms. Stephens received no notice that she was being accused of violating the September 6, 1996 order, and of equal importance, Mr. Cooner failed to prove beyond a reasonable doubt that Ms. Stephens did not comply with this order.

The second shortcoming is procedural. Civil and criminal contempt proceedings should not be tried simultaneously because of the significant differences in the respective burdens of proof and procedural rights accorded to the person accused of contempt. Proceedings for indirect criminal contempt cannot be commenced without the notice required by Tenn. R. Crim. P. 42(b). Giving this notice at an early stage eliminates any possible confusion concerning the nature of the proceeding and better enables the alleged contemner to invoke

-4-

his or her procedural rights. *Jones v. Jones,* App. No. 01A01-9607-CV-00346, 1997 WL 80029, at *3 (Tenn. Ct. App. Feb. 26, 1997) (No Tenn. R. App. P. 11 application filed).

Appellate courts review the substance of contempt judgments using the "abuse of discretion" standard of review. *Hawk v. Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993). We are not so deferential about adherence to procedural requirements because trial courts must comply strictly with the absolute provisions of the law. *Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). Strict oversight of the procedure employed by trial courts is necessary to ensure that courts wield their broad contempt power in accordance with the rule of law and the requirements of procedural fairness. *Sanders v. Sanders,* App. No. 01A01-9601-GS-00021, 1997 WL 15228, at *3 (Tenn. Ct. App. Jan. 17. 1997) (No Tenn. R. App. P. 11 application filed).

The procedure employed by the trial court in this case was fundamentally flawed because of the lack of notice required by Tenn. R. Crim. P. 42(b) and because the trial court was apparently attempting to consider Mr. Cooner's petitions for criminal contempt and for civil contempt simultaneously. Even though Ms. Stephens did not frame the issue precisely in these terms, we should take it up in order to prevent prejudice to the judicial process[1] and because the procedural oversight involved substantial rights and more likely than not affected the outcome of the proceeding.[2]

The substantive and procedural flaws in this contempt proceeding cannot be remedied by vacating the contempt judgment and remanding the case for retrial. Thus, rather than taxing the parties and the trial court with additional, pointless proceedings, I would reverse the judgment of contempt and remand the case to the trial court with directions to dismiss Mr. Cooner's petition to hold Ms. Stephens in contempt.

---

[1]Tenn. R. App. P. 13(b)(3) permits this court to consider issues not presented for review in order to prevent prejudice to the judicial process.

[2]Tenn. R. App. P. 36(b) permits this court to grant relief from final judgments for errors when an "error involving a substantial right more probably than not affected the judgment or would result in prejudice to the judicial process."

## III.

The court has not dealt with the issue of whether Ms. Stephens should be required to pay the legal expenses Mr. Cooner incurred in pursuing his contempt petition. Trial courts may award attorneys fees in proceedings to enforce child support decrees or in proceedings involving the custody or change of custody of children. Tenn. Code Ann. § 36-5-103(c) (1996). However, this was not such a proceeding. Criminal contempt proceedings, unlike civil contempt proceedings, are for the benefit of the court not for the benefit of the parties. *State ex rel. Agee v. Chapman,* 922 S.W.2d at 519. Accordingly, in the absence of a statute or rule enabling prevailing parties in criminal contempt proceedings to recover their attorney's fees, I would hold that the trial court did not have authority to order Ms. Stephens to pay Mr. Cooner for the legal expenses he incurred to pursue his criminal contempt petition.

_____
WILLIAM C. KOCH, JR., JUDGE