IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 6, 2004 Session

# CHARLES NICHOLAS GRIFFITH v. JESSICA LYNN GRIFFITH

Appeal from the Chancery Court for Humphreys County
No. CH-01-048    R.E. Lee Davies, Judge

No. M2003-01060-COA-R3-CV - **Filed November 22, 2004**

The sole issue before the court in this protracted domestic relations litigation is the finding by the trial court that Appellant was in criminal contempt for failure to make mortgage and tax payments on the marital residence. Appellant asserts on appeal that the trial court did not set a specific deadline for payment and that the uncontested proof shows that Appellant lacked the ability to pay when the debt became due. We reverse the trial court action finding that the evidence does not establish beyond a reasonable doubt that Appellant had the ability to pay.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, and FRANK G. CLEMENT, JR., JJ., joined.

John D. Kitch, Nashville, Tennessee, for the appellant, Charles Nicholas Griffith.

Mike W. Binkley, Nashville, Tennessee, for the appellee, Jessica Lynn Griffith.

## OPINION

This appeal involves the aftershock from a domestic relations earthquake involving extensive marital property, extensive marital debt, and convoluted legal maneuvering by the parties. Jessica Lynn Griffith and Charles Nicholas Griffith were married on January 27, 1966 and are parents of three children born to the marriage, two of whom were already emancipated at the time the divorce Complaint was filed on March 13, 2001. This was the first marriage for both parties. During the course of the marriage the parties accumulated vast marital real property holdings, along with very substantial marital debt relative to these real estate holdings. Honorable R.E. Lee Davies, Circuit Judge of the 21st Judicial District, was designated by the Chief Justice to try this Humphreys County case.

The record reveals that between the filing of the Complaint on March 13, 2001, and the Amended Final Order of Divorce on May 29, 2003, the parties favored the court with a seemingly endless array of petitions, motions, affidavits, and various other procedural devices mostly dealing with the management of extensive property holdings, and reflecting a mutual desire to fight it out to the bitter end on every issue.

On May 29, 2003, the trial court entered its fifteen page Amended Final Decree of Divorce granting a divorce to Mrs. Griffith on grounds of adultery and dividing 57 separate tracts of marital real property between the parties with a value division of $942,245 to Mr. Griffith and $772,490 to Mrs. Griffith. In addition, a total of $96,000 in value was assigned to Mr. Griffith as his separate property and $10,000 in value assigned to Mrs. Griffith as her separate property. The Final Decree further provided for the division of some $55,000 in personalty. Because of the limited issue before us on appeal, we need not consider the domestic relations issues between the parties except insofar as such issues are relevant to the criminal contempt finding as to Mr. Griffith.

In the May 29, 2003 Amended Final Decree the trial court held:

> With regard to the contempt issues, the Court finds that Mr. Griffith is guilty of criminal contempt on one count set forth in one Petition for Contempt filed by Mr. Binkley on behalf of his client, Mrs. Griffith.
>
> As to Mrs. Griffith's Second Amended and Supplemental Petition for Contempt alleging that Mr. Griffith violated another court Order, which was the court's Order entered on March 12, 2002, which, *inter alia*, ordered Mr. Griffith to pay the property taxes associated with the home place, as well as the mortgage associated with the home place, the Court finds that Mr. Griffith is guilty beyond a reasonable doubt of willful criminal contempt of the Court's Order of March 12, 2002 by willfully failing to pay the home property taxes associated with the parties' family home, as well as the mortgage payments on the parties' home, as required by the Court's Order of March 12, 2002. The Court specifically finds that Mr. Griffith was ordered to pay the property taxes and the home mortgage in March 2002 and that the required payments were in the nature of support and it is certainly something that Mr. Griffith had the assets and financing ability to pay had he made some plan for the payment of the Court ordered payments. Therefore, the Court finds that Mr. Griffith is in willful criminal contempt of the Court's Order of March 12, 2002 by violating the Court's Order in failing to pay the property taxes associated with the parties' home place and by failing to pay the mortgage on the home place, as required by this Court's Order of March 12, 2002.
>
> As to Mr. Griffith's punishment, the Court finds that, taking into consideration the fact that Mr Griffith is an attorney, and that he failed to follow the specific orders of the Court, the Court finds that Mr. Griffith should be fined $50.00 and incarcerated in the Williamson County jail at a time to be set by the Court if an appeal is not taken on the contempt issue or if the appeal is unsuccessful.

In the event Mr. Griffith wishes to appeal the decisions relative to contempt, bond is hereby set at $1,000.00.

It is from this finding of criminal contempt that Mr. Griffith appeals. No procedural issue is raised as to the criminal contempt finding, and the only issues before the Court are the assertions by Mr. Griffith that the Order allegedly violated "did not set a specific deadline for compliance" and further that the proof at the contempt hearing did not establish beyond a reasonable doubt that he had the ability to pay at the time required by the Order. Before considering the issues on appeal it is necessary to address certain matters that have come before the Court after the filing of the record on appeal.

On January 28, 2004, Honorable Michael W. Binkley, attorney for Jessica Lynn Griffith in this case, filed in this Court a Motion to be allowed to withdraw as counsel for Jessica Lynn Griffith for reasons stated in an affidavit attached. This affidavit asserted:

1.      I am a licensed attorney practicing law in Nashville, Davidson County, Tennessee. I have been practicing law since graduation from Vanderbilt Law School in 1977.

2.      I have represented Jessica Lynn Griffith in the lower court with regard to her divorce case, which was an extremely lengthy, convoluted and complex divorce case. The case was tried before The Honorable Special Judge Robert E. Lee Davies, who was appointed by the Tennessee Supreme Court to hear this divorce case, which was originally filed in the Chancery Court of Humphreys County, Tennessee.

3.      The trial of this case lasted three days and was tried on November 18, 2002, December 2, 2002 and December 27, 2002. After the trial of this case, there were post-trial motions ruled upon by the trial judge. An Amended Final Decree of Divorce was finally entered in this case on May 29, 2003.

4.      Thereafter, on September 12, 2003, the Appellant, Charles Nicholas Griffith, filed his bankruptcy petition in the United States Bankruptcy Court for the Middle District of Tennessee. The case number of the bankruptcy proceedings filed by Mr. Griffith is 303-11723-M83-11.

5.      Shortly thereafter, I, along with my client, Jessica Lynn Griffith, hired Robert J. Mendes, attorney with Mendes & Gonzales, PLLC, 120 30th Avenue North, Nashville, Tennessee 37203 to represent our interest as creditors of Mr. Griffith in the Federal Bankruptcy Court.

6.      After several weeks of negotiations, depositions and further negotiations, the parties, through their attorneys, were able to reach a "settlement agreement," a copy of which is annexed to this Affidavit as **Exhibit A**. The settlement agreement was subsequently approved by the Federal Bankruptcy Court. A copy of the Court's Order approving the parties' settlement agreement is annexed to this Affidavit as **Exhibit B**. As evidenced by the copy of the lengthy settlement

agreement, Section 6(d) stated a portion of the agreement between the parties as follows:

> In connection with the Divorce Case Appeal, Ms. Griffith and Binkley agree to not participate substantively in the Divorce Case Appeal. This agreement only requires Ms. Griffith and Binkley to take no position regarding the existing finding of contempt in the Divorce Case Appeal. Ms. Griffith and Binkley are not under any obligation to take any affirmative steps regarding the existing finding of contempt or regarding the Divorce Case Appeal.

7. In consultation with my client, Jessica Lynn Griffith, and in consultation with our attorney, Robert J. Mendes, we have concluded that the settlement agreement would be breached if Ms. Griffith filed a responsive brief in this cause and Ms. Griffith and I agree that the appropriate procedure under the circumstances would be for me to withdraw as her attorney of record in this case. Ms. Griffith fully understands that procedurally and in order to comply with the terms of the settlement agreement in the bankruptcy court that I, as her attorney of record, cannot file a responsive brief in this cause because such filing of a brief opposing Mr. Griffith's position in the appeal of this case would be a substantial breach of the agreement entered into between the parties and the respective attorneys and approved by the bankruptcy court.

8. Therefore, Ms. Griffith, with the full understanding of her obligations and responsibilities under the settlement agreement and in compliance with the procedures of the Court of Appeals with regard to her obligation and my obligation "to take no position regarding the existing finding of contempt in the Divorce Case Appeal," I, along with the approval of my client, respectfully request that I be allowed to withdraw as attorney of record for Ms. Griffith in the appeal of this case.

9. Ms. Griffith fully understands that I am withdrawing as her attorney of record in this appeal and understands the reasons for my withdrawal of my representation of her in this appeal pursuant to Section 6(d) of the settlement agreement in the bankruptcy court in this cause.

10. I have been in communication with counsel for Mr. Griffith and he fully understands and agrees with my withdrawal from representing Ms. Griffith in the appeal of this case based upon the settlement agreement reached in the United States Bankruptcy Court for th Middle District of Tennessee.

It thus appears that all issues existing between the parties have been resolved in bankruptcy court to their mutual satisfaction and it is only because criminal contempt involves an affront to the Court that this appeal presents a justiciable issue. Criminal contempts are punitive in character and the proceeding is to vindicate the authority of the law and the court as an organ of society. *Shiflet v. State*, 400 S.W.2d 542, 544 (Tenn. 1966).

The difficulty for the Court in this case is that the practical abandonment in this Court of support of the action of the trial court, either by appearance and argument of counsel or by

supporting appellate brief, leaves this Court to consider the essentially unrefuted assertions of Appellant with nobody as advocate in support of the trial court action. Laboring under this handicap we address the issues on appeal.

On March 18, 2002, the trial court ordered Mr. Griffith to continue to pay bills and expenses of the family home place including, but not limited to, mortgage expense, home insurance, and home taxes. On December 20, 2002, Ms. Griffith filed her Second Amended and Supplemental Petition for Contempt asserting willful failure by Mr. Griffith to pay home property taxes associated with the family home. This was coupled with a failure to pay the annual mortgage debt on the premises.

The assertion on appeal by Mr. Griffith that the Order did not set a specific deadline for compliance is without merit. He knew the date on which the mortgage payment was due and he knew the dates on which property taxes were due.

It is the second issue on appeal which is determinative. While the marital property figures set forth in the May 29, 2003 Final Divorce Decree show a combined marital property value of $1,714,735, these represent net figures as to the value of real property. If such figures could show liquid assets of $942,245 available to Mr. Griffith at the time the mortgage debt and taxes became due he would clearly be in criminal contempt. The difficulty is that these 57 parcels of real estate show a gross value of $4,649,200 encumbered by $2,934,465 of mortgage debt secured by the respective parcels of land with extensive cross collateralization of security. The essentially unrefuted testimony of Mr. Griffith is that he had more money going out in mortgage debt than was coming in as income and that the depressed state of the real estate market, together with his inability to market properties, left him in an impossible financial situation. During his testimony the following exchange tells the story.

THE COURT: The real answer to the question is, the bank was hollering a lot louder than the court order, right?
THE WITNESS: There wasn't enough money.
THE COURT: I know.

The trial court had listened to this tale of woe throughout the day and the following finally occurred:

THE COURT: You know what, all this is kind of missing the point, I think. This order went down in March. You knew it was due in September. There's a lot of time to plan for that payment. You've got property. You could have come into court and petitioned the Court to sell a piece of property to take care of this obligation. You could have petitioned the court to require Ms. Griffith to refinance. You just didn't want to. There are just lots of things you could have done, but you didn't. We're wasting time.
THE WITNESS: Can I explain just a little about - -
THE COURT: No, I don't want to hear it, I really don't.

The controlling law provides:

> Criminal contempts, on the other hand, are intended to preserve the power and vindicate the dignity and authority of the law, and the court as an organ of society. *Daugherty*, 137 Tenn. at 127, 191 S.W. at 974; *Gunn. v. Southern Bell Tel. & Tel. co.*, 201 Tenn. 38, 41-42, 296 S.W.2d 843, 844-45 (1956). Therefore, sanctions for criminal contempt are generally both punitive and unconditional in nature. *Id.* While criminal contempts may arise in the course of private civil litigation, such proceedings, "in a very true sense raise an issue between the public and the accused." *Daugherty*, 191 S.W. at 974 (internal citations and quotations omitted). In the trial of a criminal contempt case, therefore, guilt of the accused must be established by proof beyond a reasonable doubt. *Robinson*, 377 S.W.2d at 912.

*Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996).

Considering the record as a whole we find no evidence that Mr. Griffith diverted money to his own use to the exclusion of mortgage creditors. As a result, the evidence does not rise to the required proof of guilt beyond a reasonable doubt that Mr. Griffith had the ability to pay. Tenn. R. App. P. 13(e). *See Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn.Ct.App. 1993). On this basis the judgment of the trial court as to criminal contempt is reversed. The case is remanded to the trial court for such further proceedings as may be necessary. Costs of the cause are assessed to Appellee.

_____
WILLIAM B. CAIN, JUDGE