IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 8, 2004 Session

## SHIRLEY HUFFNAGLE v. FREDERICK HUFFNAGLE

**Appeal from the Circuit Court for Davidson County**
**No. 02D-2583     Muriel Robinson, Judge**

---

**No. M2003-02651-COA-R3-CV  - Filed November 7, 2005**

---

This appeal involves post-divorce criminal contempt sanctions.  The former wife filed a petition in the Circuit Court for Davidson County seeking to hold her former husband in contempt for failing to pay spousal support and to maintain a life insurance policy and a club membership.  The trial court determined that the former husband was guilty of eighteen separate acts of criminal contempt and sentenced him to 180 days in jail.  After the former husband appealed the contempt sanction, the trial court stayed its order pending appeal.  We have determined that the former wife failed to present sufficient evidence to prove beyond a reasonable doubt that her former husband had willfully failed to pay spousal support or to discharge his other financial obligations.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL and FRANK G. CLEMENT, JR., JJ., joined.

Larry Hayes, Jr., Nashville, Tennessee, for the appellant, Frederick Huffnagle.

Scott Lyon, Nashville, Tennessee, for the appellee, Shirley Huffnagle.

**OPINION**

**I.**

Ms. Shirley Huffnagle and Dr. Frederick Huffnagle were divorced in 1983 in California.  Approximately eight years later, Ms. Huffnagle returned to court because Dr. Huffnagle had failed to comply with the spousal support provisions of their divorce decree.  On February 7, 1992, the parties settled their dispute by entering an agreed order requiring Dr. Huffnagle (1) to make non-modifiable monthly spousal support payments of $2,000 until either party died or Ms. Huffnagle remarried, (2) to maintain a $200,000 life insurance policy naming Ms. Huffnagle as the beneficiary, (3) to provide Ms. Huffnagle with health insurance and to pay her dental expenses, and (4) to maintain his membership at the Balboa Bay Club for Ms. Huffnagle's use and benefit.

Dr. Huffnagle later moved to Nashville, Tennessee. He sold his membership in the Balboa Bay Club in 1998, and in 2001, he ceased carrying medical insurance for Ms. Huffnagle. In addition, he payed no spousal support to Ms. Huffnagle during the eighteen months between January 2002 and June 2003. In November 2002, Ms. Huffnagle, who still resides in California, domesticated the February 7, 1992 California order in the Circuit Court for Davidson County. Three months later, she filed a civil contempt petition against Dr. Huffnagle, and on August 27, 2003, she filed an amended petition seeking to hold Dr. Huffnagle in criminal contempt for willfully failing to comply with the February 7, 1992 order.

The trial court heard the petition for criminal contempt on October 30, 2003. The only witnesses were Ms. Huffnagle, Dr. Huffnagle, and one of the parties' grown children. Ms. Huffnagle recounted the spousal support payments and other obligations that Dr. Huffnagle had not satisfied. The parties' son testified that his father had recently vacationed at Disney World with his new wife and family, and that his father's son with his second wife was enrolled in a private school whose tuition was $10,000 per year. Dr. Huffnagle denied that he had cancelled the $200,000 life insurance policy but declined to answer most other questions on Fifth Amendment grounds.

In its November 20, 2003 order, the trial court found that Dr. Huffnagle had willfully failed to comply with the February 7, 1992 order. The court determined that Dr. Huffnagle was $38,720 in arrears on his spousal support at the time of the hearing and concluded that he had committed no fewer than eighteen acts of criminal contempt between January 1, 2002 and October 1, 2003.[1] Accordingly, the trial court sentenced Dr. Huffnagle to 180 days in jail – ten days for each contemptuous act. The court also awarded Ms. Huffnagle a judgment for $38,720, ordered Dr. Huffnagle to pay Ms. Huffnagle's attorney's fees and court costs, and ordered Dr. Huffnagle to provide Ms. Huffnagle with proof of the required life insurance policy. Dr. Huffnagle appealed the contempt sanctions, and the trial court stayed the imposition of his jail sentence pending the appeal.

**II.**

The sole issue on this appeal involves the 180-day sentence for criminal contempt. Dr. Huffnagle asserts that Ms. Huffnagle failed to prove that his failure to comply with the requirements of the February 7, 1992 order was willful beyond a reasonable doubt. We reluctantly agree.

Criminal contempt convictions are punitive in character, and their primary purpose is to vindicate the court's authority. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003); *Black v. Blount*, 938 S.W.2d 394, 398 (Tenn. 1996). Persons charged with criminal contempt are presumed innocent, and the party seeking to hold them in criminal contempt has the burden of proving that they willfully failed to comply with the court's order beyond a reasonable doubt. *Black v. Blount*, 938 S.W.2d at 398; *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993); *Storey v. Storey,* 835 S.W.2d 593, 599 (Tenn. Ct. App. 1992). The essential ingredients of a charge of

---

[1]It is not coincidental that the number of contemptuous acts the trial court found that Dr. Huffnagle had committed was identical to the number of months that Dr. Huffnagle had failed to pay spousal support before Ms. Huffnagle filed her contempt petition.

criminal contempt are (1) the existence of a reasonably specific court order, (2) a violation of that order, and (3) proof that the person charged with criminal contempt violated the order willfully.

In the context of spousal support, a party can be held in criminal contempt for failure to pay support only if the court first determines that he or she had the ability to pay at the time the support was due and that the failure to pay was willful. *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000); *Moyers v. Moyers,* No. 01A01-9612-CV-00556, 1997 WL 367639, at *2-5 (Tenn. Ct. App. July 2, 1997) (No Tenn. R. App. P. 11 application filed). To prove willfulness, the party seeking the criminal contempt sanction must prove beyond a reasonable doubt that the defendant deliberately or intentionally disobeyed the spousal support order. *See generally TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1272 (6th Cir. 1983) ("[w]illfulness, for this purpose, implies a deliberate or intended violation, as distinguished from an accidental, inadvertent or negligent violation").

On appeal, a person convicted of criminal contempt loses his or her presumption of innocence and bears the burden of overcoming the presumption of guilt. *Thigpen v. Thigpen*, 874 S.W.2d at 53. This court does not reweigh the evidence, and we will not disturb a guilty verdict for lack of sufficient evidence unless the facts contained in the record, as well as any inferences reasonably drawn from the facts, are insufficient, as a matter of law, to enable a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Black v. Blount*, 938 S.W.2d at 399.

The evidence presented at the October 30, 2003 hearing proved beyond a reasonable doubt that Dr. Huffnagle had appropriately defined support obligations under the February 7, 1992 order, including the obligation to pay Ms. Huffnagle $2,000 per month in spousal support, to maintain his membership at the Balboa Bay Club for Ms. Huffnagle's benefit, and to provide Ms. Huffnagle with evidence that he had obtained and maintained a $200,000 life insurance policy naming her as the beneficiary. The evidence also proved beyond a reasonable doubt that Dr. Huffnagle had failed to abide by the provisions in the order. In fact, Dr. Huffnagle did not contest the evidence that he had failed to comply with these obligations.

However, the only evidence that Dr. Huffnagle's willful failure to make the payments or comply with the other provisions of the February 7, 1992 order consisted of his adult son's testimony regarding the Disney World vacation and the fact that Dr. Huffnagle's minor son was attending private school. Ms. Huffnagle presented no evidence regarding Dr. Huffnagle's current ability to meet his financial obligations under the February 7, 1992 order. She offered no evidence regarding his medical practice, his salary or other sources of income, or his tax returns. She further failed to prove that Dr. Huffnagle, rather than his present wife, paid for the Disney World vacation or his son's private school tuition. In short, she failed to prove beyond a reasonable doubt that Dr. Huffnagle had sufficient resources to meet his support obligations under the February 7, 1992 order but that he was diverting these resources to pay for vacations and private school tuition.

We have concluded that Ms. Huffnagle failed to meet her burden of proving beyond a reasonable doubt Dr. Huffnagle's current ability to pay spousal support and the willfulness of his failure to do so. Her evidence simply leaves open the possibility that the luxuries that Dr.

Huffnagle's new family is enjoying have been financed by someone other than Dr. Huffnagle. Therefore, we have no choice other than to reverse the finding of criminal contempt.

### III.

The judgment of criminal contempt is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal to Shirley Huffnagle for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.