IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2012 Session

# SMITH COUNTY PLANNING COMMISSION
## v.
# CARVER TRUCKING, INC.

**Appeal from the Circuit Court of Smith County**
**No. 2009-CV-84     John D. Wootten, Judge**

**No. M2011-00146-COA-R3-CV - Filed July 11, 2012**

This appeal involves a contempt finding against a closely-held corporation. The defendant closely-held corporation owned real property located on a highway. The trial court held that the corporation had violated zoning ordinances by maintaining and operating a trucking terminal and salvage yard in an unauthorized area. The trial court enjoined the corporation from maintaining a trucking terminal at this location and directed the corporation to remove junk from the property. The corporation then leased the property to a business associate who continued to operate a trucking terminal on the property and failed to remove the junk. A contempt petition was filed against the defendant corporation. The trial court determined that the defendant corporation had violated the injunction and was in contempt of court. The defendant corporation now appeals, arguing that the corporation cannot be held in contempt for the actions of the tenant on the property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

Timothy A. Davis, Lebanon, Tennessee for Defendant/Appellant Carver Trucking, Inc.

Jack O. Bellar and Jamie D. Winkler, Carthage, Tennessee for Plaintiff/Appellee Smith County Planning Commission

## OPINION

### FACTS AND PROCEEDINGS BELOW

Defendant/Appellant Carver Trucking, Inc. ("Carver Trucking") is a closely-held Tennessee corporation solely owned and operated by Wayne Carver ("Mr. Carver"). Carver Trucking operated a trucking business located on property at 632 Lebanon Highway in Smith County, Tennessee. In 2002, Carver Trucking began leasing the property at issue from the property's owner.

In December 2008, Plaintiff/Appellee Smith County Planning Commission ("Planning Commission") issued a notice of violation to the owner of the property on which Carver Trucking operated. The notice indicated a violation of two zoning ordinances occurring on the property, specifically, the operation of (1) an automobile wrecking, junk, and salvage yard and (2) a freighting/trucking terminal. The owner of the property appealed only the notice of violation as to the trucking terminal to the Smith County Board of Zoning Appeals.[1] After the zoning board determined that the property in question was in fact being used as a truck/freight terminal in violation of the county ordinance, the property owner deeded the property to its tenant, Carver Trucking, for $22,000. After taking ownership of the property, Carver Trucking continued to use the property for the cited illegal purposes, namely, the storage of junk, salvage, and wrecking materials, and the operation of a freight trucking terminal.

In May 2009, the Planning Commission filed the instant lawsuit in the Circuit Court of Smith County against Carver Trucking, seeking to enforce the zoning ordinances and abate the nuisance. In July 2009, the trial court conducted a hearing on the Planning Commission's request for injunctive relief. Based on the testimony of several witnesses, the trial court held that Carver Trucking was violating the Smith County zoning ordinances by (1) maintaining and operating a trucking and freight terminal which amounted to a public nuisance and (2) maintaining "an illegal automobile wrecking, junk and salvage yard." In August 2009, a written order was entered, ordering Carver Trucking to cease the enjoined activities immediately and permanently enjoining it from maintaining a trucking/freight terminal at this location. The trial court's August 2009 order stated:

---

[1]The former owner of the property only appealed the Planning Commission's determination that a trucking/freight terminal was being operated on the property, and did not appeal the determination that a junk yard was being operated. Supposedly, the former property owner had agreed to have Carver Trucking remove the junk vehicles from the property.

[Carver Trucking] is maintaining and operating an illegal/trucking freight terminal at 632 Lebanon Highway, Carthage, Smith County, Tennessee and must cease such activities immediately. [Carver Trucking] is permanently enjoined from operating a trucking/freight terminal at this location. [Carver Trucking] can no longer transfer trailers; drop-off trailers; re-hook to trailers; park/store tractor trailers for any period of time; allow drivers to park while resting or taking meals; or any other activities associated with handling freight and the operation of a trucking company. Tractors may only be at the property to be repaired so that they are speedily dispatched. Repair of trailers shall be an irregular and infrequent occurrence. Trailers may only remain at the property for repair for a maximum of twenty-four (24) hours. No freight shall be present at the property.

The order also permanently enjoined Carver Trucking from maintaining a junk, wrecking, or salvage yard on the property and from parking any vehicle on the public right-of-way at or near the property. Finally, the trial court ordered Carver Trucking to remove the junk materials causing the violation, such as appliances and automobile parts, within sixty days of the order.

Apparently the use of the property for a trucking terminal and junk yard continued, despite the injunction. In July 2010, approximately a year after the court issued the injunction, the Planning Commission filed a contempt petition against Carver Trucking, alleging that Carver Trucking continued to maintain and operate an illegal trucking/freight terminal and an automobile junk, wrecking or salvage yard at the property. The Planning Commission also asserted that Carver Trucking continued to cause a public nuisance by obstructing traffic in connection with its operation of the trucking terminal. Carver Trucking denied the allegations in the contempt petition.

In October 2010, the trial court held an evidentiary hearing on the Planning Commission's contempt petition. At this hearing, the Planning Commission entered into evidence over two dozen photographs of the property, and several neighbors testified. The neighbors testified that the trucking activities on the property continued after the injunction was issued in August 2009. They also testified that junk remained on the property.

Mr. Carver testified at the hearing. He acknowledged that Carver Trucking still owned the property at issue and held title to the property under its corporate name. He asserted, however, that Carver Trucking had ceased doing business. Mr. Carver claimed that he contacted the Secretary of State concerning the dissolution of the corporation in September 2009; purportedly, Mr. Carver did not receive the paperwork on dissolution until August 2010. No documents on the alleged dissolution of Carver Trucking were entered into

evidence.[2] Mr. Carver testified that, in approximately August 2009, when the trial court issued the injunction, he began renting the property at issue to Michael Butler ("Butler"). Mr. Carver said that there was no written lease; the agreement between Carver Trucking and Butler was a "handshake lease" for rent of approximately $200 per month. Mr. Carver first testified that he had sold his tractor-trailer trucks in connection with the claimed dissolution of his business. Shown an August 2009 photograph of a truck on the property with "Carver Trucking" on it, Mr. Carver explained that before Carver Trucking was purportedly dissolved, Butler had leased those trucks to Carver Trucking. Thus, the trucks on the property belonged to Butler and were the same trucks Carver Trucking had used. Mr. Carver denied involvement in Butler's trucking operation and denied receiving any profits from Butler's business, other than rent. Mr. Carver denied that Carver Trucking continued to operate a trucking terminal or a junk yard on the property. He initially denied that a trucking terminal continued to operate on the property at all. However, he conceded that he usually went to the property daily to "pick up and straighten up" or to help Butler put away automotive parts. In doing so, he saw the activities on the property. After this testimony, Mr. Carver admitted that he had "probably" seen many of the trucking activities described by the neighbor witnesses, such as tractor-trailers stopping at the property and truck drivers entering and leaving the property.

Butler also testified at the hearing. Butler said that he was aware of the injunctive order entered as to the use of the property. In fact, he said, Mr. Carver personally informed him of the activities that were no longer permitted on the property due to the injunction. Butler denied operating a trucking terminal on the property and claimed that he only repairs and services trucks when they come in. Butler acknowledged that the trucks he was using at the time of the hearing were the same trucks that he had previously leased to Mr. Carver and Carver Trucking. Butler conceded that Mr. Carver "stops by ever [sic] once in a while to see how everything is going," but maintained that Mr. Carver is not paid for any work he performs.

At the conclusion of the hearing, the trial court indicated that the proof established continuing activities on the property of the type that were prohibited by the injunction. However, in view of the fact that Carver Trucking took the position that it was administratively dissolved and any activities on the property were by Butler, the trial court asked the parties to brief the issue of whether Carver Trucking had violated the injunction.

---

[2]At oral argument, in response to questions from the Court, counsel for Carver Trucking explained that the charter for Carver Trucking was simply not renewed; it expired in August 2010, shortly before the October 2010 hearing.

On November 30, 2010, after reviewing the submissions on the issue,[3] the trial court entered an order holding Carver Trucking in contempt. The trial court found that Carver Trucking had violated the previous injunctive order. It imposed a civil fine of $50 per day on Carver Trucking, beginning on August 13, 2009, the date on which the injunction was entered.

At that point, the trial court reserved some issues, such as the amount of the Planning Commission's award of attorney fees and additional sanctions against Carver Trucking, including the termination of all business activities directly or indirectly related to its previous order. However, Carver Trucking filed a premature notice of appeal on December 28, 2010. As a result, this Court remanded the case for entry of a final and appealable order. In later orders, the trial court set the amount of the attorney fee award against Carver Trucking and issued a cease and desist order as to all business activity related to the activities prohibited by the trial court's August 2009 order. As the order is now final, we consider the appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Carver Trucking states the issue for review as follows:

> Whether the trial court's ruling is contrary to the law and evidence by ruling the defendant, a defunct corporation, can be found in contempt of the court's previous order, for the activities of [its] lessee, a non party to the lawsuit.

Carver Trucking does not challenge the trial court's finding that the activities taking place on the property were contrary to the trial court's injunctive order but argues only that Carver Trucking cannot be held in contempt for Butler's activities.

To determine the standard of review, we must first ascertain whether the contempt in this case is civil or criminal:

> Contempt is classified as civil or criminal based on the action taken by the court to address the contempt. *Ahern v. Ahern*, 15 S.W.3d 73, 78 (Tenn. 2000). . . . "In a civil contempt action, the remedy imposed by the court upon a finding of contempt is designed to compel compliance with or performance of a court order." *Town of Cornersville v. Harmon*, No. M2003-01061-COA-R3-CV, 2005 Tenn. App. LEXIS 60, 2005 WL 229872, at *5 (Tenn. Ct. App. Jan. 28, 2005). This is in contrast to criminal contempt, which is punitive in nature. *Foster* [*v. Foster*, No. M2006-01277-COA-R3-CV,] 2007 Tenn. App. LEXIS 796; 2007 WL 4530813, at *3 [(Tenn. Ct. App. Dec. 20, 2007)].

---

[3]The record contains only a memorandum submitted by the Planning Commission.

***Fox v. Fox***, No. M2009-01884-COA-R3-CV, 2010 WL 4244356, at \*2 n.4; 2010 Tenn. App. LEXIS 663, at \*7-8 n.4 (Tenn. Ct. App. Oct. 26, 2010). The willful disobedience of any lawful order is punishable by criminal contempt. Tenn. Code Ann. § 29-9-102(3) (2011). "[P]unishment for criminal contempt includes a maximum sentence of ten days of confinement and a maximum fine of $50.00." ***Cottingham v. Cottingham***, 193 S.W.3d 531, 538 (Tenn. 2006) (citing Tenn. Code Ann. § 29-9-103 (2011)).

In this case, the trial court imposed a civil fine of $50 per day for each day that its injunctive order had been violated, dating back to the date on which the order was entered. The order was designed in part to be coercive, because the $50 per day fine would continue to accumulate so long as Carver Trucking remained in violation of the injunction. However, the imposition of the fine was made effective back to the date on which the injunctive order was entered. We find overall that the remedy imposed by the trial court was designed primarily to punish Carver Trucking for its past violations. Thus, the contempt finding was criminal, and we analyze it as such.

For a finding of criminal contempt,

> When the sufficiency of the evidence is challenged, our standard of review is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it.

***Cottingham***, 193 S.W.3d at 538 (citations omitted). Thus, a criminal contempt conviction is reversed "only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." ***Moody v. Hutchison***, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004) (quoting ***Barber v. Chapman***, No. M2003-00378-COA-R3-CV, 2004 WL 343799, at \*2; 2004 Tenn. App. LEXIS 111, at \*8 (Tenn. Ct. App. Feb. 23, 2004); ***Thigpen v. Thigpen***, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993)). The appellate court must review a trial court's decision on whether to impose contempt sanctions using the abuse of discretion standard of review. ***Moody***, 159 S.W.3d at 25 (quoting ***Barber***, 2004 WL 343799, at \*2; 2004 Tenn. App. LEXIS 111, at \*8) (citing ***Hawk v. Hawk***, 855 S.W.2d 573, 583 (Tenn. 1993)).

In addition, we review the order that underlies the finding of contempt to determine if it is clear and leaves no reasonable basis for doubt as to its meaning. ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346, 356 (Tenn. 2008). This is a legal question that is reviewed *de novo*, with no presumption of correctness. ***Id.***

ANALYSIS

On appeal, Carver Trucking argues that the trial court erred "by ruling [that Carver Trucking], a defunct corporation, can be found in contempt of the court's previous order, for the activities of it[]s lessee [Butler], a non-party to the lawsuit." Carver Trucking's statement of the issue combines two issues: (1) whether a "defunct" or administratively dissolved corporation can be held in contempt of court, and (2) whether Carver Trucking can be held in contempt for the activities of its lessee, Butler. We analyze these separately.

**Corporate Dissolution**

Carver Trucking's argument on this issue is, to say the least, not well developed. The stated issue refers to Carver Trucking as "defunct" and cites Mr. Carver's testimony that Carver Trucking "went out of business" and "closed down" in August or September 2009. It cites a 1944 United States Supreme Court case, *Walling v. James V. Reuter, Inc.*, 321 U.S. 671 (1944), that involves a corporation that had been administratively dissolved, but it is unclear whether the case is cited as to the effect of corporate dissolution or as to Carver Trucking's responsibility for Butler's actions.

No matter. Assuming *arguendo* that Carver Trucking put on sufficient proof that the corporation was administratively dissolved at some point,[4] it cites no authority that this status affects the trial court's power to hold Carver Trucking in contempt of court. The *Walling* case cited by Carver Trucking is of no assistance. In contrast to Carver Trucking, in *Walling*, the enjoined corporation was completely dissolved and its assets were liquidated. *Walling*, 321 U.S. at 676. In contrast, in the case at bar, Carver Trucking still owned the property that is the subject of the injunction. *Id.* Moreover, the issue considered by the Court in its 1944 decision in *Walling* was simply whether the corporation's status necessitated that the case be remanded before the appeal could be considered. *Id.* at 675. It tells us nothing about whether Carver Trucking can be held in contempt of court.

We note that Tennessee Code Annotated § 48-24-202(c) states that a corporation that is administratively dissolved "continues its corporate existence but may not carry on any business except that necessary to wind up and liquidate its business." Tenn. Code Ann. § 48-24-202(c) (2002). Section 48-24-105(b) states that dissolution does not prevent the

---

[4]Carver Trucking submitted into evidence no documentation as to its corporate status. Mr. Carver testified that the corporation was "administratively dissolved" in August 2010 – a year after the injunctive order was issued – and that he received unspecified "dissolution papers" from Tennessee's Secretary of State at that time. The fact that Carver Trucking was no longer operating a trucking terminal does not affect its legal status as a corporate entity, and Mr. Carver's testimony on the corporation's legal status is vague at best.

commencement of legal proceedings against the corporation "in its corporate name." Tenn. Code Ann. § 48-24-105(b)(5) (2002). Moreover, even assuming that Carver Trucking was eventually administratively dissolved, it continued engaging in activities which, by the way, were not consistent with winding down. It not only continued to own the property at issue, it leased the property to Butler.

Carver Trucking cites to us no authority to support its attempt to use its allegedly dissolved status as a shield against the trial court's authority to hold the corporation in contempt of the court's orders. This argument is without merit.

## Lessee's Activities

Carver Trucking argues that "injunctive relief [cannot be granted] against Carver Trucking, Inc. for the activities of its lessee." Carver Trucking cites Rule 65.02(2) of the Tennessee Rules of Civil Procedure, which provides: "Every restraining order or injunction shall be binding upon the parties to the action, their officers, agents and attorneys; and upon other persons in active concert or participation with them who receive actual notice of the restraining order or injunction by personal service or otherwise." Tenn. R. Civ. P. 65.02(2) (2011). Carver Trucking cites *Metropolitan Gov't of Tenn. v. Printer's Alley Theater*, in which contempt charges were brought against an individual because he was "inexorably involved" in the sexually oriented business operations of the enjoined corporations. *Metro. Gov't of Tenn. v. Printer's Alley Theater*, Nos. M2007-00329-COA-R3-CV, M2007-00391-COA-R3-CV, 2008 WL 199849, at *6-8; 2008 Tenn. App. LEXIS 31, at *23 (Tenn. Ct. App. Jan. 23, 2008). Thus, Carver Trucking argues that it should not be held responsible for Butler's actions because there was no proof that Butler was an agent or officer of Carver Trucking, that Carver Trucking had transferred its business to Butler, that Carver Trucking was involved in Butler's day-to-day operations, or that Carver Trucking received any remunerations from Butler's business. On this basis, Carver Trucking asserts that the trial court erred in holding Carver Trucking in contempt for Butler's actions.

Thus, Carver Trucking does not dispute that the activities of its tenant that took place on its property were activities that were prohibited under the August 2009 injunction. It argues only that Butler, a non-party, engaged in those activities, so Carver Trucking did not violate the injunction.

The Tennessee Supreme Court in *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.* examined contempt powers where a party is alleged to have disobeyed a court order. *Konvalinka*, 249 S.W.3d at 354. Although *Konvalinka* involves civil contempt, its recitation of the essential elements is instructive:

Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Id.* at 354-55 (internal citations omitted). Here, Carver Trucking appears to argue that Carver Trucking, the entity "alleged to have violated the order" was not the entity that "actually disobeyed or otherwise resisted the order." *Id.* at 355. *Konvalinka* notes that the issue of "whether the party facing the civil contempt charge actually violated the order" is "a factual one." *Id.* at 356. Thus, we consider the evidence on this element to determine whether it was insufficient to support the trial court's finding beyond a reasonable doubt. *Moody*, 159 S.W.3d at 25.

As noted above, the illegal activities on this property have been ongoing for years. Once zoning authorities obtained injunctive relief against the former owner of the property, that owner escaped the injunction by selling the property to Carver Trucking. This forced the zoning authorities to institute new legal proceedings against Carver Trucking. Once zoning authorities obtained injunctive relief against Carver Trucking, Carver Trucking promptly rented the property on a handshake to business associate Butler, who continues the same activities on the same property, even using the same trucks, complete with "Carver Trucking" emblazoned on the sides. Meanwhile, the illegal activities on the property continue unabated.

Under Carver Trucking's reasoning, for zoning authorities to stop the illegal activities on the property, they would be required to institute new legal proceedings against Butler and obtain injunctive relief against him. Of course, based on past history, if this were done, the baton would be passed to yet another party, whom zoning authorities would be forced to sue, and so on, and so on. Thus, Carver Trucking invites this Court to participate in a game of sorts, the object of which is to continue the enjoined activities without being in technical violation of the injunction. We decline to do so.

In the August 2009 order, the trial court found that Carver Trucking was "maintaining and operating an illegal trucking/freight terminal at 632 Lebanon Highway, Carthage, Smith County, Tennessee and must cease such activities immediately." It also found that Carver Trucking was "maintaining an automobile junk, wrecking or salvage yard at 632 Lebanon Highway, Carthage, Smith County, Tennessee." Carver Trucking was permanently enjoined from continuing to allow the property to remain in such a state. Carver Trucking was further directed to "cease operation of the premises as a truck terminal."

This order is very clear.  It is equally clear that Carver Trucking has willfully violated it.  By leasing the premises to Butler with full knowledge that Butler intended to, and did, continue the enjoined activities on the property, Carver Trucking "maintained" a truck terminal, junk yard, and public nuisance on the property.  Thus, Carver Trucking is not held in contempt for Butler's actions; Carver Trucking is held in contempt for its own. ***See State v. James***, 145 S.W.2d 783, 787 (Tenn. 1940).

Thus, from our review of the record, we find evidence sufficient for the trial court to find beyond a reasonable doubt that Carver Trucking violated the trial court's August 2009 injunctive order.  We find no error in the trial court's decision.

## CONCLUSION

The decision of the trial court is affirmed.  Costs on appeal are taxed to the Appellant Carver Trucking, Inc. and its surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE