# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
December 14, 2010 Session

## STATE OF TENNESSEE v. IN RE: AARON BONDING COMPANY (ELISHA TOMLINSON AND TOMMY GREGORY)

**Direct Appeal from the Criminal Court for Davidson County**
**No. 1798     Steve Dozier, Judge**

---

**No. M2009-02242-CCA-R3-CD - Filed March 30, 2011**

---

The trial court found the Defendants, Elisha Tomlinson and Tommy Gregory, in contempt of court for their part in the depleting of $250,000 in certificates of deposit held as collateral for the bond writing ability of Aaron Bonding Company. On appeal, both Defendants contend that the evidence is insufficient to sustain this finding. After a thorough review of the record and applicable authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and J.C. MCLIN, JJ., joined.

James O. Martin, III, Nashville, Tennessee for the Appellant, Elisha Tomlinson.

William B. Bruce, Nashville, Tennessee, for the Appellant, Tommy Gregory.

Robert E. Cooper, Jr., Attorney General and Reporter; Lindsy Paduch Stempel, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; John Zimmerman, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts and Procedural History

This case arises from an investigation of the solvency of Aaron Bonding Company, a bonding agency operating in Davidson County, Tennessee. The record reflects that Aaron Bonding Company filed a bankruptcy petition on February 13, 2009. On March 10, 2009, the Davidson County Criminal Court ordered the Clerk of the Court to provide the following information related to the Aaron Bonding Company: (1) its most recent semi-annual report;

(2) its bankruptcy petition; (3) current bonds including names of defendants on bond, court dates, and similar information on outstanding forfeits; and (4) a listing of the company's current collateral. The order indicated that a copy of the order was sent to the District Attorney General, a Metro Nashville Government attorney, and the bonding company.

On March 25, 2009, the trial court issued an order setting a hearing date. The order stated that all owners and agents of Aaron Bonding Company must appear to address the status of the current bankruptcy petition and their current intent to conduct bonding matters in Davidson County. The trial court instructed the owners and agents of the company to bring with them all original certificates of deposit ("CDs") used as collateral for writing bonds in Davidson County at the time and all records pertaining to CDs used as collateral since January 1, 2006. The order indicated that a copy of the order was sent to the Assistant District Attorney, Tommy Gregory, and Juanita Richardson.

On April 3, 2009, a hearing on the trial court's March 25, 2009, order was held to address the Clerk's questions and concerns about how the bankruptcy of Aaron Bonding Company would affect the company's ability to continue to write bonds. The attorney for the company, William B. Bruce, and its owners informed the court that the bankruptcy petition had been dismissed. Attorney Bruce said that the company was owned by Juanita Richardson, who was eighty-seven years of age and not actively engaged in the bonding business; her sons, one of whom was Tommy Gregory; her grandson; and her granddaughter, Elisha Tomlinson. The only two owners who appeared at the hearing were Tommy Gregory and Elisha Tomlinson. Attorney Bruce also informed the court that the company had offered as additional security to the Davidson County Criminal Court Clerk, a piece of real property valued at $79,000. Attorney Bruce said the company provided the Clerk with a copy of the documents creating the CDs that were the company's collateral, and, when Aaron Bonding Company filed a bankruptcy petition, the Clerk was notified that the vast majority of the funds held in those CDs had been withdrawn. He said that, before the hearing, neither he, Gregory, nor Tomlinson was aware that the majority of the value of the CDs had been withdrawn.

Tommy Gregory testified that he and his mother, Juanita Richardson, had owned Aaron's Bonding Company for approximately fifteen years. He agreed that he had submitted to the Court that he had sufficient collateral on file with the Clerk's Office to cover the bonds that the company had written. When asked how much collateral he was supposed to have with the Court, he stated, "I don't know exactly." He then said he had some collateral in the form of a CD and also "some property" in Roane County that Richardson owned. He did not know the address of the property, and he said he was not involved in the transaction wherein Richardson drafted a warranty deed to the Clerk's Office conveying that property.

Gregory explained that, before this action against his bonding company, he and his wife filed for divorce after more than thirty years of marriage, which caused him to be depressed and to be unable to run his company. In his stead, his daughter, Tomlinson, attempted to run the company. At the time of the hearing, Gregory was back at work and attempting to assist his daughter.

Gregory addressed the CDs that the company offered the Clerk's Office as collateral. He said that he was not involved with the CDs, which were from Regions Bank (formerly Union Planters Bank) but that his mother, Richardson, offered those as collateral. He explained that Richardson was not present at the hearing because of her advanced age and poor health. He conceded Richardson lived with him and still made her own decisions and was the official owner of the company and the Roane County property. Gregory testified he had no knowledge that the CDs that were with the court had recently been withdrawn by Richardson or by Bill Tomlinson, who was Gregory's son-in-law and Elisha Tomlinson's husband. He claimed that, as far as he knew, the CDs were still with the court and were what his company was using as collateral to write bonds.

Gregory said he did not know where the original copies of the CDs were, but he "guess[ed]" his mother still had them. He denied reading the court's order asking him to bring all the original paperwork for the CDs to the hearing.

On cross-examination, Gregory testified that his daughter made and brought to the hearing copies of documents verifying the existence of the CDs that he believed were the basis for his company's authority to write bonds. Included with those copies was a copy of a deed that conveyed the Roane County property to Richardson.

Elisha Tomlinson, Gregory's daughter, testified that she is a bail agent for Aaron Bonding Company and that she ran the company in her father's absence. Tomlinson testified that only three people wrote bonds for the company other than herself: her father; her brother, Michael Gregory; and her stepson, Alex Tomlinson. Kevin Sloan, her oldest brother, was qualified by the company to write bonds but wrote few bonds because he had other employment. Tomlinson estimated Sloan had only written one or two bonds in the past year. Tomlinson denied that her husband owned another bonding company, T Bonding, but said that he did work at T Bonding.

Elisha Tomlinson testified that she was unaware that funds had been withdrawn from the CDs being held as collateral for Aaron Bonding Company's bond-writing ability. She said it was not possible for her husband to withdraw those CDs because his name was not listed on the account. Tomlinson testified that she had no knowledge whether her grandmother, Richardson, had withdrawn the CDs. Tomlinson said she believed the original

copies of the CDs were still with the Clerk's office. When asked how, in that case, she obtained copies of the CDs, Tomlinson testified that she got them from the company's bankruptcy attorney, who had obtained copies of all of the CDs. Tomlinson denied that, during the bankruptcy proceedings, any mention was made about whether these CDs had been cashed. Elisha Tomlinson agreed that the CDs totaled $293,000 and said she was unaware whether that money was still in the company's bank account.

Elisha Tomlinson testified that the company did not pay taxes in 2005, 2006, 2007, or 2008 and that it owed Metro Nashville Government for car forfeitures. In attempting to rectify these obligations, Tomlinson worked with "somebody" from the State of Tennessee, who told her to file a Bankruptcy Petition to "get it all fixed." After filing the petition, Elisha Tomlinson spoke with an attorney who told her to dismiss the petition and pay the tax obligations owed so that the company could remain in business. Elisha Tomlinson agreed that a final judgment was entered against the company in the amount of $50,000, which was owed to the Metro Nashville Government drug fund for "car bonds." She conceded that before this final judgment was entered she, on behalf of the company, agreed to pay Metro $25,000 to have the case dismissed. She, however, never came to the appointed meeting to pay the funds. She testified she was absent because she was consulting with a second attorney and was unsure if the company actually owed the $25,000. In her absence, however, a final judgment in the amount of $50,000 was entered against the company.

At this point in the hearing, the trial court directed the parties to have a Regions Bank representative present at court on Monday, April 6, 2009, to testify about what CDs were still being held at the bank. The judge recommended that Elisha Tomlinson and Tommy Gregory take Juanita Richardson to the bank and ask for the bank to inform them who cashed out any of the CDs, in the event that any were cashed out. The trial court indicated that, if the CD accounts were all still in place and funded in the amount necessary for Aaron Bonding Company's collateral, the collateral for Aaron's Bonding Company would be sufficient. He directed the parties to ensure that Richardson was present at the Monday hearing.

At the Monday, April 6, 2009, hearing, the parties informed the trial court that they held no remaining CD accounts at Regions Bank. The trial court asked who had cashed out the money, and Aaron Bonding Company's attorney told the court that, on October 25, 2007, fifteen CDs were deposited into a new CD. A month later, $2377 "went to a Chapter Thirteen Trustee" with regard to the personal bankruptcy of one of the persons listed on the account. The attorney did not know which owner had used the money for his or her personal bankruptcy. In November 2007, $2623 went to Richardson and $32,396 went to Bill Tomlinson, Elisha Tomlinson's husband.

The parties informed the court that Regions Bank informed them that incremental

-4-

withdrawals had been made against CDs held by the bank, but that the bank did not know yet who made the withdrawals. The bank was investigating the matter and intended to prepare a report for the court. The court informed the parties that it was clear that Aaron's Bonding Company had no collateral to cover the bonds that the company had written and that, currently, there were $63,000 in forfeitures with the court and the $50,000 judgment owed to Metro Government. Upon the court's questioning, the parties told the court that the company had approximately "two-point-five" in outstanding bonds.

Juanita Richardson then testified she and her son, Tommy Gregory, owned Aaron Bonding Company. She did not recall how much money she provided as collateral in order for the company to have the ability to write bonds. She did recall, however, that when she purchased the CD she sent it to the Clerk as well as a warranty deed to a piece of property in Roane County. Richardson did not remember the address of the property, saying she held it only for investment purposes, but recalled that she purchased it from Donald Lee Tomlinson, Bill Tomlinson's brother. Richardson agreed that around this time, Bill Tomlinson worked at Aaron Bonding Company, but she did not think he had the authority to withdraw money on behalf of the company.

Richardson identified $150,000 that she had cashed out of CD accounts. She said she withdrew the money to "pay bills," and she thought she was entitled to withdraw the money. She agreed that she had previously filed for a Chapter 13 bankruptcy, and she recalled withdrawing money from the CDs as part of this proceeding. On the same day she withdrew money, she gave Bill Tomlinson $32,000 to pay the balance of what she owed on the Roane County property. Upon further questioning, she said part of the $32,000 was to pay for the balance on the property, and she was unsure why she gave him the remainder of the $32,000. Richardson testified that she thought the money was hers and she could use it as she pleased. She denied knowing that Aaron Bonding Company had $2,500,000 in outstanding bonds with no collateral to back those bonds. Richardson said she did not tell Gregory that she had cashed out the CDs.

Because Bill Tomlinson again did not appear at the hearing, the court rescheduled a third hearing for the following morning and issued a subpoena for Bill Tomlinson's appearance. At that hearing, Bill Tomlinson testified he had worked for T Bonding Company for three or four years. Before that, he worked for Jenkins Bonding Company, and, before working at Jenkins, he worked at Aaron Bonding Company. He said that he was married to Elisha Tomlinson, who worked for Aaron Bonding Company, and that, while he himself did not work for Aaron Bonding Company, he sometimes assisted the company in small matters. He said he did not, however, write bonds for Aaron Bonding and have his wife sign those bonds.

Bill Tomlinson denied that he went with Juanita Richardson to Regions Bank to help Richardson remove cash from the CD accounts. He explained that, around that time, his wife, Elisha Tomlinson, asked Richardson if they could borrow money from Richardson. Richardson agreed, and Elisha Tomlinson delivered the money to Bill Tomlinson, in the form of a cashier's check. Bill Tomlinson said he used some of the money to buy a vehicle but was unsure how he used the remainder of the money.

Bill Tomlinson was asked to explain the transaction wherein Richardson purchased the Roane County property from his brother. He said his brother had purchased the property to improve it and then resell it but then fell "ill." His brother asked him to buy the property, but Tomlinson did not have the money. He spoke to Elisha Tomlinson and told her if Richardson purchased the property then Aaron Bonding Company could "write on it." Tomlinson testified that he gave his brother $24,000 to pay for part of the property, which Richardson then conveyed to the court to increase Aaron Bonding Company's writing authority. He explained that, because his wife worked at Aaron Bonding Company, he wanted Aaron Bonding Company to be able to use the property. In November of 2007, he gave his brother $7000 or $8000 from the $32,000 check he received from Richardson. This was the final payment on the property.

Bill Tomlinson testified that he never spoke with his grandmother-in-law about the loan for the property and that he only spoke with Elisha Tomlinson about this subject. He said Elisha Tomlinson knew that part of the $32,000 was going to be used to pay off what Richardson owed on the property. He said he considered $17,000 of this money repayment to him for the money he had already paid to his brother for this property. He assumed the remaining $8000 was a gift to him because he was not asked to repay this additional amount.

Bill Tomlinson testified that he learned that the CDs that the court clerk thought were collateral for Aaron Bonding Company's bond writing were no longer held at the bank when the company filed for bankruptcy.

At the conclusion of this testimony, the ADA first noted he and the court were waiting on bank records. He then asked that the court issue an order that Richardson show cause why she should not be held in criminal contempt of court for her withdrawal of the CDs that funded Aaron Bonding Company's collateral. The trial court took the matter under advisement until the bank could offer documentation supporting what had happened to the CDs.

On July 24, 2009, the trial court held a hearing wherein the bank records were presented. Richard Glasgow, an investigator for Regions Bank, testified he received a

request for information about an account held at Regions that was restricted for collateral for bonds. Glasgow listed the twenty-nine CDs that the clerk's office thought were collateral for bonds and described what happened to each of the CDs. Some of the money in the CDs was distributed to Juanita Richardson, at Richardson's direction over the telephone or by her signature on a withdrawal slip. Checks were issued to "ABC for Joe Torrence," who was the Criminal Court Clerk at the time. Other money was distributed by the authorized signature of Elisha Jackson and was moved from the CD to what he believed was, at the time, Aaron Bonding Company's checking account. He said, however, this was no longer an account associated with Aaron Bonding Company. Still other money was transferred, per telephone requests, to a different checking account associated with Aaron Bonding Company.

Glasgow listed the balance of each account held at the bank in the name of Richardson, Tomlinson, or Aaron Bonding Company. The balances totaled less than $5000.

Elisha Tomlinson testified at this hearing, saying that her grandmother, Richardson, handled the accounting for Aaron Bonding Company. Tomlinson said she did what her grandmother asked her to do with regard to the banking of the company, such as making deposits, etc.

Tomlinson identified a withdrawal in the amount of $14,000 and said her father gave her permission to sign his name for the withdrawal. She said any time she signed her father's name, which the bank records showed she did relatively frequently, she asked his permission. She said her grandmother would tell her to go to the bank, and, when she was there, the bank would tell her to sign something, which she did. She identified multiple withdrawals, which she made with her father's permission and which totaled thousands of dollars.

Elisha Tomlinson testified that her maiden name was "Jackson" and then identified a withdrawal by Elisha Jackson in the amount of $3063.62. She conceded that this indicated that she had, in fact, at some point been allowed to withdraw money on behalf of the company. She said, however, she always informed Richardson and Gregory when she used her own signature to withdraw money.

Elisha Tomlinson agreed that the bank records indicated that Richardson had given her money from the CDs for Tomlinson's own personal use. Tomlinson denied knowledge that the money she was withdrawing was money being used as collateral for Aaron Bonding Company's bond-writing ability.

Elisha Tomlinson identified Aaron Bonding Company's semi-annual reports, one of which was signed by Gregory and two of which she signed for Gregory. She agreed that the documents were notarized and that the notary indicated that Gregory signed the documents.

She explained that her father was standing with her when she signed the documents for him. The reports indicated that the bonding company still maintained the CDs at the bank. Tomlinson testified she did not know this was untrue at the time she signed these documents.

On cross-examination, Tomlinson testified that Gregory never withdrew any money from the bank and that she only did so at Richardson's request.

On examination , Tomlinson testified that the notary might have been in another room when she signed the documents. When the trial court reminded her of her previous testimony that the notary was, in fact, in the room, Tomlinson again said he was in the room but that he may have walked off when he stamped the papers.

Tomlinson said she had been working for the bonding company for eighteen years and, during that time, had signed for both Richardson and Gregory on company documents. She said she was not involved in obtaining or procuring any of the original CDs, and she was never involved in the company's accounting. Tomlinson testified that she would never have agreed to withdraw money for Richardson had she been aware that the accounts were collateral for the bonding company. Tomlinson explained that she was a licensed bonding agent and, as such, was aware that a bonding company's collateral was not to be used because it is pledged to the courts. Tomlinson said she prepared the company's semi-annual reports using the Clerk's office report, which was sent to her via e-mail. The e-mailed document showed her how much collateral the company had and how many bonds the company had outstanding.

Tomlinson testified that she was a listed signatory on one of Aaron Bonding Company's business accounts and she was also listed on Richardson's personal accounts. She said the first time she learned that the CDs had been cashed was before a hearing in this case.

On redirect examination, Tomlinson agreed that she signed Richardson's signature to some documents removing money from CDs. She also agreed that the documents showed that she sometimes withdrew money and received cash, but she denied any memory of this. She said she never knew why she was moving money at the bank and never found it odd that Richardson and Gregory asked her to do so.

On recross-examination, Tomlinson testified that she thought that a CD was something that was purchased and that was held at the Clerk's office and not the bank. She did not think that the money in the accounts at the bank was the same money being used for the CDs. Tomlinson maintained that, while her father gave her permission to sign his name at the bank, she did not believe that he had any idea that the money was coming from the

CDs.

Tommy Bradley from the Criminal Court Clerk's Office testified that the Clerk's records indicated that Aaron Bonding Company had a piece of real property valued at $79,300 and $214,400 worth of CDs filed with the court as collateral for the company's bond-writing. The company had a total of $93,500 in outstanding forfeitures, including one that was being appealed, one final forfeit that was past due, and one final forfeit that was not due until August 4, 2009. Bradley indicated that Aaron Bonding Company's total postings had gone down each month, which indicated that they were successfully ensuring that defendants on bond appeared for court. The amount of the company's total outstanding bonds was now $1,382,750, down from $2,500,000.

On cross-examination, Bradley testified that, as of the date of the hearing, Aaron Bonding Company owed the court $5050.92.

Juanita Richardson was re-called as a witness, and she testified that, from time to time, she called the bank and instructed her banker to move money from her CDs. She then would tell Elisha Tomlinson to go to the bank, where Tomlinson would sign paperwork to authorize the transfer of the money. Richardson said none of the $200,000 that served as collateral remained in any of her accounts.

On July 24, 2009, the trial court entered an order notifying Aaron Bonding Company and its owners, Tommy Gregory, Juanita Richardson, and Elisha Tomlinson to appear and show cause, pursuant to Tennessee Rule of Criminal Procedure 42, to address the circumstances surrounding the removal of collateral, which was to be held as security for the Davidson County Criminal Courts for purposes of securing bonds, from Aaron Bonding accounts with Regions Bank/Union Planters. The trial court set a hearing for August 28, 2009, and sent a copy of the order to the parties' respective attorneys.

At the August 28, 2009, hearing, the parties presented no additional proof. The State argued that the defendants should be found in criminal contempt because the proof showed that they knowingly withdrew money that was pledged as collateral for the operation of Aaron Bonding Company. Gregory's attorney argued, on behalf of Aaron Bonding Company, that the trial court should consider civil contempt and not criminal contempt, which requires proof beyond a reasonable doubt. He asserted that Gregory never knew that money had been withdrawn from the CDs and that he had simply given his daughter permission to sign his name, not knowing where the money was coming from.

The trial court took the matter under advisement and then issued an order finding Juanita Richardson, Tommy Gregory, and Elisha Tomlinson each guilty of one count of

criminal contempt. The court ordered each to pay a fifty-dollar fine and court costs and to serve ten days in jail. It is from this order that Tommy Gregory and Elisha Tomlinson appeal.

## II. Analysis

On appeal, both Gregory and Tomlinson contend that insufficient evidence was presented at the hearing to establish that either was in criminal contempt of court.

When the defendant challenges the sufficiency of the convicting evidence, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citation omitted).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn from that evidence. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, and this court will not reweigh or reevaluate the evidence. *State v. Sutton*, 166 S.W.3d 686, 689-90 (Tenn. 2005). This Court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the prosecution's theory." *Bland*, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." *Id*. (citation omitted).

As is pertinent to the present case, Tennessee courts are empowered "to issue attachments, and inflict punishments for contempts of court" based upon "[t]he willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." T.C.A. § 29-9-102 (2006). Criminal contempt is a misdemeanor, and as such is punishable by "fine or imprisonment, or both." T.C.A. § 29-9-103(a); *see also* T.C.A. § 39-11-110 ("[A]ll violations of law punishable by fine or confinement for less than one (1) year, or both, are denominated misdemeanors.").

A criminal contempt is indirect when the "criminal conduct" was not committed in the judge's presence. *See* Tenn. R. Crim. P. 42(a). The accused in an indirect criminal contempt proceeding must be afforded notice of the charge and a hearing. Tenn. R. Crim. P. 42(b). Criminal contempt does not "require initiation by an indictment or presentment, and there is no right to a trial by jury." *Moody v. Hutchison*, 159 S.W.3d 15, 27 (Tenn. Ct. App. 2004).

"In a criminal contempt case, the guilt of the accused must be established beyond a reasonable doubt." *Barber v. Chapman*, No. M2003-00378-COA-R3-CV, 2004 WL 343799 at * 2 (Tenn. Ct. App., at Nashville, Feb. 23, 2004), *no Tenn. R. App. P. 11 application filed*. To find an accused guilty of criminal contempt, a court must find the "misbehavior, disobedience, resistence, or interference to be wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000). The proof must show that the accused "acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191-92 (1998). "The person charged with criminal contempt does not have the burden of proving his/her innocence." *Baxter Neal Helson v. Leticia Finley Cyrus*, No. 01-A-01-9809-CH-0050, 1999 WL 16414 at * 1 (Tenn. Ct. App., at Nashville, Mar. 29, 1999), *no Tenn. R. App. P. 11 application filed*. Tennessee Rule of Criminal Procedure 42(b), however, allows "the requisite notice of an indirect criminal contempt to be given 'by an order to show cause .'" *Id.*; *see* Tenn. R. Crim. App. 42(b). The use of the show cause order to initiate a criminal contempt proceeding may not result in placing the burden of proof upon the accused. Helson, 1999 WL 16414 at * 1. On appeal from a criminal contempt conviction, the appellate court should view the proceeding below "as a whole" to determine whether "the trial judge properly applied the burden of proof." *Dawn Perkerson v. Michael Frederick Perkerson*, No. 01A-01-9602-CV-00059, 1996 WL 426807 at *3 (Tenn. Ct. App., at Nashville, July 31, 1996), *perm. app. denied, concurring in results only* (Tenn. Nov. 25, 1996).

"Appellate courts do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct .App. 1993) (citing Tenn. R.App. P. 13(e)).

In the case under submission, we conclude that the evidence is sufficient, beyond a reasonable doubt, to support the trial court's judgments. The trial court issued a show cause order, and Defendant Gregory presented no proof other than alleging he was unaware that money was taken from the CDs that were used as collateral for Aaron Bonding Company's bond-writing ability. The proof, however, showed that Gregory was one of the owners of Aaron Bonding Company and that he assisted in purchasing the CDs at Regions Bank originally in the amount of $250,000. On multiple occasions after that, his daughter called him and requested his permission to sign his name in order to take money from Aaron

Bonding Company's account at Regions. There was no evidence presented that Aaron Bonding Company had any accounts at Regions sufficient to fund these multiple withdrawals. Defendant Gregory offered no explanation as to where he thought that the money Tomlinson was withdrawing was coming from. At the time of the hearing, the total balance of the accounts held by Aaron Bonding Company diminished to the amount of $3000. Apart from this $3000, the company possessed only a piece of real property in Roane County valued at $79,000 to secure the $2,500,000 in bonds that it had written. At the time of the show cause hearing, the amount of outstanding bonds had decreased to $1,382,750 but was still secured only by the real property and the $3000. It was clear to the trial court that Gregory was aware that money was being taken from the CDs purchased as collateral. After thoroughly reviewing the transcript, we agree with the trial court. The Defendant is not entitled to relief on this issue.

Defendant Tomlinson worked as a bonding agent for Aaron Bonding Company for eighteen years. As such, she was aware that collateral being used by a bonding company was not to be touched. She testified that, after Gregory's divorce, she became more involved in the daily operations of the company, which included withdrawing money when necessary. She testified that she went to the bank, at Richardson's request, and signed documents to remove money. She said she had no idea where the money was coming from. She, however, opened the bank statements and also assisted in the company's filing for bankruptcy. She also signed affidavits to the Criminal Court Clerk swearing that the company still possessed the money being used as collateral. She testified that she never checked whether, in fact, the company had that money, but rather relied upon the Clerk's e-mailed records listing the company's collateral. The trial court found this testimony unconvincing. The trial court correctly found that Tomlinson's repeated withdrawals of large sums of money from Regions bank, which depleted the company's collateral, constituted criminal contempt of court. We agree, and she is not entitled to relief on this issue.

## II. Conclusion

After a thorough review of the record and the applicable authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE