# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### April 3, 2019 Session

## CHERYLE LUANE LEVOY v. JASON HUNTER LEVOY

**Appeal from the Chancery Court for Overton County**
**No. 12-CV-18      Ronald Thurman, Chancellor**

_____

### No. M2018-01276-COA-R3-CV

_____

In this post-divorce dispute, the mother filed a criminal contempt petition against her ex-husband, alleging multiple violations of a permanent parenting plan. The husband responded with a petition for temporary emergency custody. The trial court granted temporary custody to the father and scheduled a hearing on both petitions. After the hearing, the court found the father guilty of 12 counts of criminal contempt beyond a reasonable doubt and sentenced him to 120 days in jail. Finding no credible evidence to support the father's custody petition, the court dissolved the temporary custody order. On appeal, the father argues that the trial court erred in finding him guilty of criminal contempt. Because the evidence is sufficient to support a finding of criminal contempt, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J. and RICHARD H. DINKINS, J., joined.

John B. Nisbet III, Livingston, Tennessee, for the appellant, Jason Hunter Levoy.

Philip M. Jacobs, Cleveland, Tennessee, for the appellee, Cheryle Luane Levoy.

# OPINION

## I.

### A.

In 2013, Cheryle Levoy ("Mother") and Jason Levoy ("Father") divorced. On September 29, 2016, the Chancery Court for Overton County, Tennessee, adopted a modified permanent parenting plan for the parties' two minor children. The modified plan named Mother as the primary residential parent and granted Father 125 days of residential parenting time. During the school year, Father exercised his parenting time every other weekend and Tuesday through Thursday on weeks that he did not have weekend time. In the summer, the parties had equal parenting time.

The current dispute arose after Mother discovered that the parties' thirteen-year-old daughter was communicating with an almost eighteen-year-old boy. Mother disapproved of the relationship and grounded the daughter. Somewhat predictably, the daughter was unhappy with Mother's decision. After spending the following weekend with Father, the daughter announced she did not want to return to Mother's home. And Father accommodated her request.

According to the parenting plan, Father was to return the daughter to Mother on Sunday, February 18, at 6 p.m. But Father and daughter never arrived at the exchange location. Father told Mother that the daughter had refused to return to Mother's home. And despite being reminded by local law enforcement of his obligation to comply with the parenting plan, Father did not return the daughter to Mother's care on Sunday.

On Monday, both parents were present at the daughter's school at dismissal. Father later claimed that he was only there to provide the daughter with emotional support. But the daughter went home with Father instead of Mother, leaving Mother unable to exercise her parenting time. On Thursday, a similar scenario ensued.[1] Again, the daughter went home with Father, denying Mother her parenting time.

On February 22, 2018, Mother petitioned the court to find Father in contempt for his violations of the permanent parenting plan. She also requested modification of the plan based on a material change in circumstances. She later amended the petition to include additional violations and to provide notice that she sought a finding of criminal contempt.

---

[1] In accordance with the parenting plan, Father had custody on Tuesday and Wednesday night that week.

This state of affairs continued for the rest of February. On February 24, Father and his wife left on a scheduled vacation. And in violation of the right of first refusal provision in the parenting plan, Father did not offer Mother the opportunity to care for their daughter while he was out of town. Instead, the daughter stayed with other relatives. Each day after school, the daughter went home with Father's designee rather than Mother.

By letter dated March 1, 2018, the school principal informed both parents that the school intended to follow the directives of the most recent custody order at dismissal. To that end, the school prohibited the non-custodial parent from being present at dismissal. After receiving the letter, Father chose not to send the daughter to school.

On March 13, 2018, Father filed a petition for temporary emergency custody, alleging the child would suffer immediate and irreparable harm if she were returned to Mother's custody. A few days later, the court awarded Father temporary custody. After Father obtained temporary custody, the daughter returned to school.

B.

The court heard evidence on both petitions at a combined hearing. Mother and Father testified as well as the principal of the daughter's school. Mother missed 12 parenting days between February 18 and March 16, 2018. Father acknowledged that he violated the parenting plan. But he claimed that he did so out of concern for his daughter's safety.

Father testified that the daughter threatened to run away if he forced her to return to Mother's home. He also claimed that the daughter had engaged in self-harm as a result of psychological or emotional abuse while in Mother's custody. So he did not return the daughter to Mother's custody as directed in the parenting plan, and he did not comply with the right of first refusal provision when he went on vacation.

For her part, Mother denied any abuse. She acknowledged that the daughter had been upset when Mother disciplined her for engaging in an inappropriate relationship. But she claimed the daughter had never tried to harm herself.

The school principal agreed that the daughter appeared happy and well-adjusted at school. And, from her observations, Mother and daughter had a positive relationship.

The court found Father guilty beyond a reasonable doubt of 12 counts of criminal contempt and sentenced him to 120 days in jail. All but ten days of the sentence were suspended, pending strict compliance with the parenting plan. The court found Father willfully violated the parenting plan by interfering with Mother's parenting time and failing to comply with the right of first refusal. The court also found Mother and the

school principal to be credible witnesses. The court rejected Father's explanations for his behavior. Because there was no credible evidence of any danger to the child while in Mother's custody, the court dissolved the temporary custody order.

## II.

On appeal, Father only challenges the court's criminal contempt finding. Under Tennessee Code Annotated § 29-9-102(3) (2012), courts have the power to "issue attachments, and inflict punishments for contempts of court" for "[t]he willful disobedience or resistance of any officer of the such [sic] courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." A finding of contempt may be either civil or criminal in nature. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). Criminal contempt, which is at issue here, "is punishment for an offense against the authority of the court." *Sherrod v. Wix*, 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992). "In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe*, 104 S.W.3d at 474.

But once convicted of criminal contempt, a person loses his presumption of innocence. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal, the person convicted "bear[s] the burden of overcoming their presumption of guilt on appeal." *Id.* We only reverse a contempt finding "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

Civil or criminal contempt requires four elements: (1) the order allegedly violated must be lawful; (2) the order must be clear and unambiguous; (3) the individual charged must have violated the order; and (4) the individual must have acted willfully in violating the order. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (stating that the four-element analysis outlined in *Konvalinka* applies to criminal and civil contempt actions). Father concedes that he violated clear and unambiguous provisions of a lawful parenting plan.

So our sole concern is the proof of willfulness. In the context of criminal contempt, willfulness has two elements: (1) intentional conduct; and (2) a culpable state of mind. *See State v. Beeler*, 387 S.W.3d 511, 523 (Tenn. 2012); *Konvalinka*, 249 S.W.3d at 357. A person acts intentionally when "it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a) (2018). The evidence supports the court's finding that Father deliberately violated the parenting plan. Father concedes as much. But he contends that his actions were not willful because he was trying to protect his daughter.

4

Generally, the culpability inquiry addresses whether the relevant act was "undertaken for a bad purpose." *Konvalinka*, 249 S.W.3d at 357. Father asserts that he was motivated by concern for his daughter's safety and well-being. But his good intentions do not preclude a willfulness finding. *See Thigpen*, 874 S.W.2d at 53-54 (finding criminal contempt even though Mother was "following her maternal desire to help her son avoid a disturbing situation."). An act is undertaken for a "bad purpose" when the actor has "the specific intent to do something the law forbids." *See Konvalinka*, 249 S.W.3d at 357 (citing with approval this definition of willful from *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993)); *see also Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (explaining that the bad purpose element of the willfulness inquiry requires proof "that the defendant acted with knowledge that his conduct was unlawful") (quoting *Ratzlaf v. United States*, 510 U.S. 135, 137 (1994)).

The evidence at trial supports a finding that Father's violations of the plan were willful. He was aware of the provisions of the parenting plan. And he deliberately denied Mother her parenting time and the right of first refusal provided in the plan, knowing that his actions violated the court's directives.

## III.

We find sufficient evidence to support the trial court's finding that Father is guilty of criminal contempt beyond a reasonable doubt. So we affirm Father's conviction for criminal contempt and remand this case for such further proceedings as may be necessary and consistent with this opinion.

_____
W. NEAL MCBRAYER, JUDGE

5