IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs March 1, 2018

## JOHN GLEN RENKEN v. JENNIFER MARIE RENKEN

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVDV14-734  William R. Goodman III, Judge**

_____

### No. M2017-00861-COA-R3-CV

_____

In this post-divorce dispute, the father filed a criminal contempt petition against his ex-wife for alleged violations of a permanent parenting plan.  In response, the mother filed a counter-petition for criminal contempt, modification of custody, and permission to relocate.  The trial court denied the mother's petition to relocate and the father's petition for criminal contempt.  The court determined that there was not a material change sufficient to modify custody but there was material change that met the lower threshold required for modification of the residential parenting schedule.  The court adopted the position of the guardian ad litem that equal parenting time would serve the children's best interest and modified the parenting plan accordingly.  The court also found the father in criminal contempt.  We conclude that the court erred in adopting the modified residential parenting schedule without conducting a best interest analysis.  So we vacate and remand for further proceedings on this issue.  In all other respects, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part; Vacated in Part; and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which THOMAS R. FRIERSON II and ARNOLD B. GOLDIN, JJ., joined.

Jacob P. Mathis, Clarksville, Tennessee, for the appellant, John Glen Renken.

Sheri S. Phillips, Clarksville, Tennessee, for the appellee, Jennifer Marie Renken.

# OPINION

## I.

### A.

On January 9, 2015, the Circuit Court for Montgomery County, Tennessee, granted Jennifer Marie Renken ("Mother") and John Glen Renken ("Father") a divorce. As part of the divorce decree the court adopted and incorporated a permanent parenting plan for the parties' four minor children. The plan named Father the primary residential parent and granted him 234 days of residential parenting time. Mother received 131 days under the plan.

On August 24, 2016, Father filed a petition for criminal contempt against Mother for alleged violations of the parenting plan. Mother filed an answer and a counter-petition for criminal contempt and modification of the parenting plan. Mother asked the court to find Father in criminal contempt for violations of the parenting plan. She also sought a change in custody and permission to relocate with the children to Minnesota.

### B.

The court conducted a one-day hearing on the competing petitions. Only Father, Mother, and Sergeant Mark Wojnarek, an investigator with the Montgomery County Sheriff's Department, testified.[1]

The parents' relationship was highly contentious. Both parents acknowledged their communication difficulties and their ongoing disputes over interpretation of the parenting plan. The court had recently clarified various provisions of the plan in response to a previous modification request. Father contended that Mother's current action was simply a continuation of their previous dispute. Mother disagreed, claiming that the situation had worsened. According to Mother, she and Father could not "agree about what color the sky is." Father agreed that their relationship had deteriorated to such a degree that he would not sit next to Mother, even to support the children.

Mother explained that Father's interpretation of the plan vastly limited her parenting time. The plan gave Mother parenting time every other weekend and two nights during the week.[2] Because the plan specified two nights, not two days, Father insisted that Mother's parenting time began at 5 p.m. and ended at 8:30 a.m. the next day.

---

[1] We limit our description of the proof at trial only to the testimony relevant to the issues on appeal.

[2] Shortly before the hearing, the court clarified that the referenced language in the plan was intended to allow Mother two days of parenting time each week.

2

He refused to allow Mother to pick the children up after school at 3:30 p.m. Mother worked nights at the Clarksville Police Department on a rotation – four days on and four days off. So, on work days, her parenting time was compressed to two hours in the evening and less than two hours the next morning.

Mother also related how Father had recently failed to return the children on time, forcing Mother to change her summer vacation plans with the children at the last minute. The plan entitled each parent to two consecutive weeks of summer vacation with the children upon providing 30 days' notice. In February, Father notified Mother that one of his vacation weeks would be July 18-22. Mother, in turn, requested vacation time from July 23 to August 5. In June, Father amended his request to July 17-22. Mother had custody until 5 p.m. on July 17. Four days before his planned vacation, Father asked Mother to deliver the children at 7 a.m. on July 17 so that he could get an early start on his travel plans. Mother refused and delivered the children at 5 p.m. as previously planned. According to Father, Mother's delay prevented him from leaving on vacation until the morning of July 18. In retaliation, he kept the children an additional two days.

Mother further complained that Father had failed to furnish her with a working telephone number to contact the children as required by the plan. *See* Tenn. Code Ann. § 36-6-101(a)(3)(B)(i) (2017). After the discontinuation of his cell phone service, Father obtained a new phone with a different carrier. But he did not provide the new phone number to Mother until ten or eleven days later. Father claimed Mother did not need the phone number because she could use Facetime instead.

Mother explained that Father's controlling behavior had escalated. Recently, the children had witnessed him make a derogatory gesture at her during an exchange. And Mother believed he was watching her movements. She saw his truck at a coffee shop across the street from her apartment two to three times per week. After the disputes over school pick up and summer vacation, Father began filing police reports every time he believed Mother violated the plan. He also sent letters to the chief of police and contacted the city council. He even aired his grievances with Mother publicly at a recent city council meeting. Shortly before trial, she received notice that he had requested a copy of her personnel file.

The chief of police asked the Montgomery County Sheriff's Department to investigate. Sergeant Wojnarek[3] conducted a stalking investigation. Although he was

---

[3] Father argues on appeal that the court erred in allowing Sergeant Wojnarek to testify. We conclude that any objection was waived. *See* Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Although Father's attorney initially objected, he then agreed to hear the testimony and never renewed his objection.

3

concerned about Father's behavior, as of the time of trial, no criminal charges had been filed.

Mother testified that the current plan was unworkable. She asked the court to modify the plan even if she was not allowed to move. But Father maintained that the current plan was a good one; it simply needed a few more "tweaks" and clarifications.

The guardian ad litem recommended that the court award each parent equal parenting time. Father strenuously objected. He claimed that equal parenting time would not increase Mother's time with the children because of her work schedule. And he complained that she violated the current plan. Mother, however, agreed that a more consistent schedule would enable her to attend more of the children's extracurricular activities.

After hearing the evidence, the court dismissed Father's contempt petition and denied Mother's petition to relocate. Although determining that the evidence of material change did not rise to the level necessary to change custody, the court found that the lower threshold for modification of the parenting schedule had been met. The court adopted the position of the guardian ad litem and modified the parenting plan to award equal parenting time. The court also found Father in criminal contempt for two violations of the parenting plan and sentenced him to two days in jail.

## II.

### A. MODIFICATION OF THE PERMANENT PARENTING PLAN

We review the trial court's factual findings de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review the trial court's conclusions of law de novo with no presumption of correctness. *Id.* at 692.

All final divorce decrees involving a minor child must include a permanent parenting plan. Tenn. Code Ann. § 36-6-404(a) (2017). Once a permanent parenting plan is incorporated in a final divorce decree, absent an agreement, the parties must comply with the plan's terms unless they are modified by the court. *Id.* § 36-6-405(b) (2017). Tennessee courts apply a two-step analysis to requests for either a modification of the primary residential parent or the residential parenting schedule. *See, e.g., In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *11-12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification). The threshold issue is whether a material change in circumstance has occurred since the court adopted the current parenting plan. Tenn. Code Ann. § 36-6-

4

101(a)(2)(B), (C).   Only if a material change in circumstance has occurred do we consider whether a modification to the parenting plan is in the child's best interest by examining the statutory best interest factors.  *Cranston v. Combs*, 106 S.W.3d 641, 644 (Tenn. 2003).

A change in circumstance with regard to a residential parenting schedule is "a distinct concept" from a change in circumstance with regard to custody.  *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C).  In the context of a modification of custody, also known as a change in the primary residential parent, a material change in circumstance may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child."  Tenn. Code Ann. § 36-6-101(a)(2)(B)(i).  Although there are "no hard and fast rules" for determining when a material change in circumstance has occurred, factors for our consideration include: (1) whether the change occurred after entry of the order sought to be modified; (2) whether the change was known or reasonably anticipated when the order was entered; and (3) whether the change affects the child's well-being in a meaningful way.  *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002).  Not every change in circumstance is a material change; "[t]he change must be 'significant' before it will be considered material."  *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007).

The threshold for establishing a material change in circumstance is much lower where the issue before the court is a modification of the residential parenting schedule.  *See, e.g.*, *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. § 36-6-101(a)(2)(B), (C).   The petitioner still must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest," and like a material change for modification of the primary residential parent, the change must have occurred after entry of the order sought to be modified.  Tenn. Code Ann. § 36-6-101(a)(2)(C); *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007).  But, unlike the standard for a change of primary residential parent, whether the change was reasonably anticipated when the prior plan was entered is irrelevant.  *Armbrister*, 414 S.W.3d at 703.   To modify a residential parenting schedule, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstance test."  *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006).  A material change of circumstance in this context may include, but is not limited to:

> [S]ignificant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

5

Tenn. Code Ann. § 36-6-101(a)(2)(C).

The "determination[] of whether a material change in circumstances has occurred" is a question of fact. *Armbrister*, 414 S.W.3d at 692. The parent seeking a modification of the permanent parenting plan has the burden of proving a material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B), (C). As in every primary residential parent or parenting time determination, the child's needs are paramount; the desires and behaviors of the parents are secondary. *In re T.C.D.*, 261 S.W.3d at 742.

1. Material Change in Circumstance

Father argues the court erred in modifying the parenting schedule because Mother did not request an increase in parenting time in her counter-petition.[4] *See Turner v. Turner*, 473 S.W.3d 257, 270 (Tenn. 2015) (explaining that a judgment is absolutely void if it "is wholly outside of the pleadings, and no consent thereto appears" (quoting *Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996))). But our courts have the authority to grant appropriate relief to a prevailing party even if that relief was not demanded in the pleadings if the issue was tried by consent. *See* Tenn. R. Civ. P. 54.03. When issues not raised by the pleadings are tried by consent, "they shall be treated in all respects as if they had been raised in the pleadings." Tenn. R. Civ. P. 15.02.

After reviewing the transcript of the trial, we conclude that the issue of parenting time was tried by consent. Mother testified, without objection, that the current plan should be modified even if she was not allowed to move. She explained that an increase in her parenting time would make it easier to transport the children to their extracurricular activities. The guardian ad litem recommended equal parenting time. And Father expressed his view that Mother was not entitled to increased parenting time.

Father also contends that the court used the wrong standard to determine whether a material change had occurred. We disagree. The court found that the parents' inability to operate under the existing parenting plan was a material change in circumstance sufficient to modify the parenting schedule. The threshold for finding a material change

---

[4] Father also complains that Mother never filed a proposed parenting plan. *See* Tenn. Code Ann. § 36-6-405(a) ("In a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification and with the response to the petition for modification."). But a parent's failure to file a proposed parenting plan is not fatal. *See Freeman v. Freeman*, No. E2017-02110-COA-R3-CV, 2018 WL 6601563, at *5 (Tenn. Ct. App. Dec. 14, 2018) (holding that failure to "attach a proposed parenting plan to a petition to modify custody . . . does not nullify the parent's attempt to invoke the trial court's jurisdiction"); *Allen v. Allen*, No. W2017-02332-COA-R3-CV, 2018 WL 4677619, at *8 (Tenn. Ct. App. Sept. 28, 2018) (concluding that failure to file a proposed parenting plan may affect the overall success of the party's claim but does not necessitate dismissal).

to modify a parenting schedule is low. *Rose*, 2006 WL 2390980, at *2 n.3. A finding that the current plan is not working is enough. *Id.*; *see Lovlace v. Copley*, 418 S.W.3d 1, 32 (Tenn. 2013) (holding that "evidence that the parties' relationship has degenerated to the point that an existing visitation arrangement has proven unworkable in a significant way is sufficient to establish a material change").

Here, Mother proved a material change in circumstance sufficient to modify the residential parenting schedule. The parents "can't agree about what color the sky is." Their refusal to communicate and cooperate has made the current plan unworkable. Mother explained that the constant conflict was adversely affecting the children. And while Father claimed that Mother was simply reviving old grievances, Mother testified that the conflict had escalated, pointing to numerous recent events. The court credited Mother's testimony on this issue. We give great deference to the trial court's findings with regard to credibility of witnesses, *In re Alexandra J.D.*, No. E2009-00459-COA-R3-JV, 2010 WL 5093862, at *3 (Tenn. Ct. App. Dec. 10, 2010), and we will not overturn such findings absent clear and convincing evidence to the contrary. *See Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014).

2. Best Interest Analysis

The finding of a material change in circumstance does not end the inquiry. *Armbrister*, 414 S.W.3d at 705. The court must then determine whether modification is in the child's best interest. *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015) (citing *Armbrister*, 414 S.W.3d at 705). Tennessee Code Annotated § 36-6-106(a) (2017) lists several factors that courts may consider in making a best interest determination. A court is not required to "list and discuss each factor." *Keisling v. Keisling*, 196 S.W.3d 703, 723 (Tenn. Ct. App. 2005). But the court's findings should demonstrate consideration of the relevant factors.

Here, the court's best interest analysis was limited to a sole paragraph in the final order:

> That the Guardian Ad Litem states that it is in the best interests of the children that the current Plan be modified whereby the day to day schedule is modified to reflect that the parties each have 182.5 days and shall exchange the children on a week on, week off basis, exchanging from school on Mondays. The Court adopts the position of the Guardian Ad Litem.

The best interest analysis is a "particularly fact-intensive process." *McEvoy v. Brewer*, No. M2001-02054-COA-R3-CV, 2003 WL 22794521, at *5 (Tenn. Ct. App. Nov. 25, 2003). Simply adopting the position of the guardian ad litem does not satisfy the requirement that the court conduct a best interest analysis. So we vacate that portion of

7

the court's order that modified the residential parenting schedule.

On remand, the court should consider the factors in Tennessee Code Annotated § 36-6-106(a) and make a determination of whether it is in the children's best interest to modify the residential parenting schedule. After examining the children's best interest, the court may again adopt an equal parenting time schedule or another schedule that serves the children's best interest. Until the court renders its decision on remand, the current, modified plan will remain in place as a temporary plan.

## B. CRIMINAL CONTEMPT

Father also challenges the court's criminal contempt finding. Under Tennessee Code Annotated § 29-9-102(3) (2012), courts have the power to "issue attachments, and inflict punishments for contempts of court" for "[t]he willful disobedience or resistance of any officer of such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts." A finding of contempt may be either civil or criminal in nature. *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003). Criminal contempt, which is at issue here, "is punishment for an offense against the authority of the court." *Sherrod v. Wix*, 849 S.W.2d 780, 786 n.4 (Tenn. Ct. App. 1992). "In criminal contempt proceedings, the defendant is presumed to be innocent and must be proven guilty beyond a reasonable doubt." *Doe*, 104 S.W.3d at 474. To find either civil or criminal contempt, "a court must find the misbehavior, disobedience, resistance, or interference to be wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000); *see also Furlong v. Furlong*, 370 S.W.3d 329, 336-37 (Tenn. Ct. App. 2011) (finding willfulness to be an element of criminal contempt based upon alleged disobedience of a court order).

Once convicted of criminal contempt, a person loses his presumption of innocence. *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). On appeal, the person convicted "bear[s] the burden of overcoming their presumption of guilt on appeal." *Id.* We reverse a contempt finding "if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e).

We can quickly dispose of Father's contention that the court erred in adjudicating both criminal contempt and the civil issues in the same hearing. First, Father made no objection to the court's procedure below and did not ask the court to bifurcate the hearing. *See* Tenn. R. App. P. 36(a). Second, "it is not unusual for a contempt charge to be tried together with the case from which it arose, for reasons of judicial economy and for the convenience of the parties." *Norfleet v. Norfleet*, No. M2013-00652-COA-R3-CV, 2014 WL 1408146, at *6 (Tenn. Ct. App. Apr. 9, 2014). While it is important in a combined hearing "for the trial court to keep the distinctions between the various claims in mind[,]" Father points to no evidence that the court confused the issues or the burdens of proof. *See id.* We find no reversible error in the court's conduct of the trial.

8

The trial court found Father in contempt for extending his summer vacation by two days and for failing to provide Mother with his new cell phone number for eleven days. The court made no finding that Father's actions were willful. And Father asserts that there was no proof at trial regarding willfulness.

In the context of criminal contempt, willfulness has two elements: (1) intentional conduct; and (2) a culpable state of mind. *See State v. Beeler*, 387 S.W.3d 511, 523 (Tenn. 2012); *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 357 (Tenn. 2008). A person acts intentionally when "it is the person's conscious objective or desire to engage in the conduct or cause the result." Tenn. Code Ann. § 39-11-302(a) (2018). To satisfy the culpable state of mind requirement, the act must be "undertaken for a bad purpose." *Konvalinka*, 249 S.W.3d at 357. In other words, willful disobedience in the criminal contempt context is conduct "done voluntarily and intentionally and with the specific intent to do something the law forbids." *Id.* (quoting *State v. Braden*, 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding this definition of willful misconduct for criminal contempt)).

The evidence at trial supports a finding that Father's violations of the plan were willful. Father's vacation time ended on July 22. Mother's refusal to shorten her parenting time on July 17 to accommodate his travel plans did not justify his unilateral decision to return the children two days late. And Father knew that he was required to provide Mother with a working phone number to contact the children. He failed to do so for eleven days with no justifiable excuse.

### III.

We conclude that Father's violations of the parenting plan were willful. So we affirm the court's finding of criminal contempt. And the evidence does not preponderate against the court's finding of a material change of circumstance sufficient to allow modification of the residential parenting schedule. But because the trial court failed to conduct a best interest analysis, we vacate the trial court's modification of the residential parenting schedule. We remand with instructions for the trial court to examine the factors under Tennessee Code Annotated § 36-6-106(a) to determine whether modifying the parenting schedule is in the children's best interest and, if so, to adopt a modified parenting schedule that serves their best interest. To avoid disruption for the children, the current, modified plan shall remain in effect as a temporary parenting plan until the court renders its decision on remand.

_____
W. NEAL MCBRAYER, JUDGE

9